SLYFIELD et al. v. PENFOLD.

(Circuit Court of Appeals, Sixth Circuit. February 11, 1895.)

No. 205.

Tugs and Tows—Wantonly Obstructing Rival Tug—Proximate Cause of Injury.

A schooner, coming into harbor, signaled for a tug. Rival tugs, the H. and the C., started on a race to secure the job. There was some wind, and the sea was rough, but navigation was not perilous or difficult. The services of the H. were accepted, and she made three unsuccessful attempts to throw her heaving line to the schooner, occupying 20 minutes, during which the schooner was drifting on a lee shore. To prevent grounding, the schooner's captain ordered the H. off; and called on the C. The C. responded, but the H. backed up in her way, obliging her to stop and reverse to avoid a collision. The C. again tried to approach, when the H. a second time backed into her course. At the third attempt the C. got the towing line aboard the schooner, secured it to her bow, and attempted to back out. Meantime the schooner had grounded. The towline was about 100 feet in length; too short for the C. to turn about with.

In backing, the C., on reaching the end of the towline, was brought up suddenly, and was thrown to port and grounded by the motion of her screw. *Held*, that the C. was justified in continuing her attempts to reach the schooner, notwithstanding the obstruction of the H., and that the proximate cause of the damage to the C. was the wanton conduct of the H., and not the voluntarily going into a perilous situation, and that the H. was therefore liable for the damage sustained by the C. 55 Fed. 1010, affirmed.

Appeal from the District Court of the United States for the Southern Division of the Western District of Michigan.

The appellants are the owners of the tug E. D. Holton, of Frankfort, Mich., which together with the tug Alice M. Campbell, of the same place, was libeled by A. E. Banks, the owner of the schooner Annie O. Hanson, for the negligent grounding of that vessel in the early morning of May 15, 1891, at the entrance to the harbor of Frankfort. The owners of the E. D. Holton and the Hanson came to a settlement of the claim against the Holton. Penfold, the appellee, owner of the Alice M. Campbell, answered the original libel, and filed a cross libel against both the Hanson and the E. D. Holton for the damages suffered by the grounding of the Campbell, which was coincident with that of the schooner, and was occasioned, as charged in the cross libel, by the faults of both vessels proceeded against. The district court, upon full hearing, dismissed the original libel against the Campbell, and also the cross libel against the Hanson, and held the E. D. Holton solely in fault for the damages suffered by the Campbell, with the usual order of reference to a master to ascertain and report the damages of Penfold, the cross libelant. On the master's report a final decree for the sum of $2,150.38 was awarded to the cross libelant, and from that decree this appeal was taken. 55 Fed. 1010.

The facts relative to the grounding and damage of the Campbell, which are the basis of the decree appealed from, are as follows: About 3 o'clock a. m. of May 15, 1891, while the tugs E. D. Holton and Alice M. Campbell were lying in the harbor of Frankfort, with steam up, and keeping watch for incoming vessels, a torchlight was seen in the offing about a mile westerly from the piers at the entrance of the harbor. Both tugs started immediately in response to the signal. The Holton, passing out of the piers into Lake Michigan a short distance ahead of the Campbell, maintained her lead, and first proffered her services to the Hanson. The Campbell, seeing that her rival could not be overtaken, stopped when within 600 or 700 feet of the schooner. The schooner shortened sail preparatory to giving her line to the Holton, which rounded to and made a futile attempt to get the schooner's towline. A second and third attempt to get the line failed through the negligence or incompetency of the Holton's crew, who spent 20 minutes in their efforts. While these efforts were being made the schooner was drifting before a westerly wind inshore, in the direction of three sandbars which lie a short distance from the beach. Seeing the peril of his vessel, and the necessity of prompt action to avoid the shoals, and angered by the unskillful handling of the Holton, the master of the Hanson ordered her off, and hailed the Campbell to take the schooner in tow. The Campbell at once started for the Hanson, but, before she got close enough to take her line, the Holton backed across the Campbell's bow, compelling the latter to stop and reverse to avert collision. The Campbell a second time essayed to take the vessel's line, and again the Holton defeated her effort by throwing herself across the Campbell's course, despite the warning hail from the master of the Hanson to keep out of the way, and again the Campbell was obliged to stop. The Campbell made a third attempt to reach the schooner, which barely succeeded, though nearly frustrated by the persistent efforts of the Holton to defeat the maneuver. Without delay the Hanson's line was made fast to the Campbell's bow, and the tug at once backed, in the hope of keeping the schooner off the bars, which were then so near that no other method of averting the stranding was possible. The movement was too late to be effectual. Before the Campbell could get the schooner under headway, the latter grounded on the middle bar, after drifting safely over the other bar. The Campbell, by the sudden stoppage of

the schooner, was thrown broadside on the beach, where she lay for two weeks before she could be released. Both the Hanson and the Campbell were greatly damaged by the grounding.

A. H. Dunlap and A. J. Dovell, for appellants.

Thomas Smurthwaite and Frank L. Fowler, for appellee.

Before TAFT and LURTON, Circuit Judges, and SWAN, District Judge.

SWAN, District Judge (after stating the facts as above). The record leaves no doubt that, but for the willful obstruction of the Alice M. Campbell by the E. D. Holton, the stranding of the Hanson, and necessarily upon the facts stated the stranding and consequent damage of the Campbell, would not have occurred. The argument of the appellants, while formally denying the Holton's misconduct, rests their appeal mainly upon two grounds: (1) That the Hanson was aground before the Campbell made fast to her, and in the attempt to release her the Campbell voluntarily assumed the risk of injury, stimulated by the hope of salvage compensation; and (2) that the Holton's action was not the proximate and responsible cause of the injury.

1. The first proposition is conclusively negatived by the facts. At the time the Campbell, in compliance with the hail of the master of the Hanson, started to take the latter's line the schooner was drifting to leeward, and without the aid of a tug would eventually have stranded, but the danger was not immediate. Ordinary care and skill, such as the law exacts from the tugboat and as the position of the vessel obviously demanded, would have sufficed to take her safely into the harbor, and the proofs are conclusive that until the repeated interference of the Holton there was no suggestion of similitude to salvage service in the undertaking of the Campbell to tow the vessel. There is not a scintilla of evidence to support this theory of appellants' case. There was no danger in the Campbell's efforts to aid the vessel until the Holton created it, after the Campbell had entered upon the performance of the towage service at the request of the master of the Hanson.

2. The second proposition raises the oft-vexed question of what constitutes the proximate cause of an injury. This is generally a question of fact, to be determined, in each case, by the circumstances attending the injury and conditions in which it happened. In Railway Co. v. Kellogg, 94 U. S. 469, it is said:

"The primary cause may be the proximate cause of a disaster, though it may operate through successive instrumentalities. * * * The question always is, was there an unbroken connection between the wrongful act and the injury,— a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? * * * The inquiry, therefore, must always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury."

The district judge determined as a fact the relation of the wrongful act of the Holton to the disaster to the Campbell. What would

have been the province of the jury in the trial of a common-law cause was, by the usage and procedure of the court of admiralty, devolved upon the judge, who necessarily found an unbroken connection between the original wrong and its consummation,—the damage to the vessels,—and that there was no independent, self-operating cause to which the disaster could be referred. The record abundantly justifies the finding of the district court upon this point. It is true that the conditions of the locality were subsidiary to the result, but their co-operation was induced and given efficacy for harm by the original wrong. The tendency of the westerly wind and sea was to carry the schooner towards and upon the bar upon which she brought up, and on which the tug was also cast, because of the sudden stoppage of the schooner which she had in tow. Another incidental influence which conspired against the tug was perhaps the shortness of the schooner's line, the effect of which was, because of the proximity of the shoal, to throw the Campbell broadside onto the bar, when her sternway was instantly arrested by the stranding of the schooner. It is manifest, however, that neither the shoal, the elements, nor the insufficiency of the towline, singly or together, occasioned the disaster. They were merely conditions, until the wrongful act of the Holton brought them into combination and made them efficient for injury. Salisbury v. Hershenroder, 106 Mass. 458; Woodward v. Aborn, 35 Me. 271; Dickinson v. Boyle, 17 Pick. 78; Palmer v. Andover, 2 Cush. 600; Metallic Comp. Cast Co. v. Fitchburg R. Co., 109 Mass. 277.

The consequence of the like acts of interference, if committed in the open lake, where there was no danger of grounding either tug or tow, might have been limited to the loss of time they occasioned, but they would obviously be the direct cause of such loss. The fact that their consequences in the locality, and under the conditions existing in the case at bar, were more serious, does not change the relation of the wrongful act to its results. The delay caused by the Holton's obstruction of the Campbell was the responsible cause which gave the conditions their capacity for harm. It was the primary cause of the stranding, and a continuous factor in the result, its connection with which was never broken. It is not a defense that natural forces and local conditions were the agencies by which the material or physical injury was inflicted. It is unquestionable, upon the proofs, that had the Campbell been permitted to take the line upon the first approach to the schooner, there would have been no difficulty whatever in towing the vessel safely into the harbor. Whether or not the Campbell's second attempt to take the schooner in tow would have been as successful is less clear, yet the reckless character of the Holton's navigation would resolve doubt upon that question in favor of the Campbell, in view of the fact that the third attempt was so nearly successful, notwithstanding the time lost in the second. The third effort of the Campbell is not to be condemned because it resulted disastrously. At most, it was an error of judgment in an emergency which left but two courses open to the master of the Campbell, and

upon which he was called upon to act without a moment's delay. He had either to abandon the schooner, then helpless to aid herself, and in water too shoal for the Holton, but navigable for the Campbell, which was of lighter draught, or to take a chance of rescuing her. He chose the latter, and his judgment is not to be condemned because the event demonstrated its error (The Star of Hope, 9 Wall. 231); nor because, in the heat of his laudable effort to rescue the schooner, he failed to perceive the increasing dangers of the situation. Much less, under such circumstances, should the wrongdoer who produced the peril be permitted to condemn the management of the injured vessel, and shield himself from the consequences of the disaster behind irresponsible causes. The principle of the familiar rule applies, that "when one ship has, by wrong maneuvers, placed another ship in a position of extreme danger, that other ship will not be held to blame, if she has done something wrong, and has not been maneuvered with perfect skill and presence of mind." The Bywell Castle, 4 Prob. Div. 219; The Elizabeth Jones, 112 U. S. 514, 526, 5 Sup. Ct. 468; The Maggie J. Smith, 123 U. S. 349, 355, 8 Sup. Ct. 159. These considerations and the statement of facts are decisive of all the points raised by the appeal. We find no error in the record, and the decree of the district court is affirmed, with costs.