## CAMPBELL v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Second Circuit. January 25, 1898.)

### No. 20.

1. COLLISION—BOATS MOORED IN SLIP—INSUFFICIENT FASTENINGS.

The owners of a vessel moored in a slip, where she has repeatedly grounded at low tide, are chargeable with knowledge of the condition of the bottom, and, if they leave her without a watchman, are bound to secure her so that any list she may be expected to take in case of an unusually low tide will be overcome. If, for want of such fastenings, she breaks loose and injures other vessels, her owners will be responsible.

2. SAME.

Owners of a vessel moored in a slip without a watchman will not be liable for injury to other vessels in the slip if, being properly secured, she is cast adrift so as to collide with them, by the malicious act of a stranger.

This is an appeal from a decree of the district court, Southern district of New York, in favor of the libelant for damages to his canal boats Howard Stellar and Tompkins, caused by a collision with respondent's car float No. 16, which broke away from her moorings, and collided with them. The facts sufficiently appear in the opinion.

Galbraith Ward, for appellant.

Jas. J. Macklin, for appellee.

Before WALLACE and LACOMBE, Circuit Judges.

PER CURIAM. The two canal boats, with others, were lying moored in the slip on the south side of the Erie dock or pier, North river, Jersey City. Next below to the southward is the Abbatoir dock, and on its north side the car float, not being needed for use, was laid up. It was secured with three lines, had been thus laid up some two or three weeks, and on the fall of the tide would take bottom, and, the bottom being uneven would list towards the Erie dock. At about 1 p. m. of February 11, 1896, at low water, the float swung across the slip, owing to the rendering of her head line from the bow cleat, which caused her amidship line to part, the float at that time having a list from the dock, and the bottom where she lay being soft, muddy, and greasy. The low tide on which this happened was lower than any that occurred in the year 1895 or in the year 1896 down to the time of the trial, being $3\frac{1}{4}$ feet below mean low water,—due to continuous heavy wind from the north and west. The district judge held that defendants were responsible, and we are inclined to concur in that conclusion. The defendants are not liable, as insurers, against all contingencies except the "act of God," as that phrase is generally understood. They would certainly not be liable for the malicious act of a stranger casting the boat adrift, if they had exercised proper care in attending to her fastenings. They were bound, however, to exercise such care and prudence in securing her as the circumstances required. And the

circumstances in this case required a very high degree of care. Inasmuch as she had repeatedly grounded at low tide, they were chargeable with knowledge of the condition of the bottom, and, if they chose to leave her in that particular place without a watchman were bound to secure her so that the list she might be expected to take, should there be an unusual fall of the tide, would successfully be overcome. It would seem from the evidence that the lines were strong enough to hold her even on this day, had none of them rendered. To that extent they fulfilled their obligations. The lines were examined every morning by some one of defendant's servants, and there is evidence that on two prior occasions it was found that the fastenings had been tampered with, and the lines slackened. The employé of defendant, who was there on the morning of the accident testified that he found the bowline slackened too much, that he took in the slack, and fastened it to the cleat with a jamb-hitch. He described with great exactness the precise way in which he made this hitch, and the evidence is conclusive—libelant's witness concurring with defendant's—that, if thus fastened, the line could not render. On the other side, there is the testimony of a boy of 15 on one of the canal boats that he noticed the fastening the day before the accident, and again after defendant's employé had left, and that it was not a jamb-hitch but simply three or four turns on the cleat. We have not had the opportunity of hearing these conflicting witnesses, and do not feel inclined to disturb the conclusion of the district court. The decree is affirmed, with interest and costs.