McWILLIAMS et al. v. PHILADELPHIA & R. RY. CO.

(Circuit Court of Appeals, Second Circuit. February 18, 1913.)

No. 147.

Towage (§ 15*)—Liability for Injury to Tow—Negligence of Master of Tow.

Respondent's two tugs hung up a flotilla of 11 coal-laden boats at a pier in East River, while distributing them to their various destinations. The tow was secured by the master of the hawser boat next the pier making his boat fast with lines to the end of the pier. On the turn of the tide the tow swung around, breaking the lines, and such hawser boat, with another of the same owner, which went adrift, were compelled

to pay salvage. *Held*, on the evidence, that such manner of leaving the tow was usual and customary, and that its breaking loose was due to the fault of the master of the boat next the pier to properly adjust the lines when the tide turned, for which respondent was not liable to its owner.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 30–38; Dec. Dig. § 15.*]

Appeal from the District Court of the United States for the District of New York; George B. Adams, Judge.

Suit in admiralty by Owen J. McWilliams and others against the Philadelphia & Reading Railway Company. Decree for libelants, and respondent appeals. Reversed.

P. M. Brown, of New York City, for appellant.

De Lagnel Berier, of New York City, for appellees.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. January 30, 1905, Philadelphia & Reading tugs Pencoyd and Wyomissing at about the last of the flood tide hung up a flotilla of 11 coal-laden boats at the foot of Nineteenth street, East River, from which point they were to be singled out and distributed to their destinations. The libelants are the owners of the boats Ben Miller and Blue Mountain; the former being the port and the latter the starboard hawser boat. Their libel alleges that the respondent's servants made the flotilla fast, and that, when it swung downstream on the turn of the tide, it got adrift because of the insufficiency of the fasts, as a result of which they had to pay salvage in the sum of $602.55 to a tug which rescued their boats, and were also obliged to lay out some $200 for repairs to the Ben Miller, caused by her coming into contact with several piers and a lighter. The libel was filed October 4, 1907, some 2 years and 10 months after the accident.

The proof is that it is usual in this port to hang up a tow in the way described for distribution, and that the practice is for the master of the hawser boat next to the pier, which in this case was the Blue Mountain, to make his boat fast, and so secure the tow. He did so in this case with what he testifies were good, strong lines. When it was properly made fast, and the boatmen had notified the tug they were all right, the master of the Wyomissing told them to let the hawsers go, and left. The Pencoyd had previously left, taking three of the boats to their destination at Harlem.

At the trial, 3 years, less 16 days, after the accident, the master of the Blue Mountain, testified that the master of the Pencoyd, as he was leaving, said:

"I will be back before the tide changes and look after you fellows."

He further testified that it was ice coming down with the ebb tide that broke the boats loose, and that the tug should have put them into the slip, instead of at the end of the pier. Not a word was said in the libel about any of these things; the sole charge being that the respondent's servants made the tow fast, and made it fast insufficiently, whereas all the testimony was to the effect that the tow was made fast by the

master of the Blue Mountain. He let the tow swing around on the ebb tide, with a constant strain on the fasts, which naturally parted them. We can see no reason to doubt that if he had rendered the lines a little as the flotilla swung, or had put out more lines, if necessary, the manœuver would have been safely executed. The only other witness for the libelants was the master of the Jack, the middle boat in the head tier, who testified that the East River was covered with solid ice, but said nothing about the master of the Pencoyd promising to come back.

The practice of bringing suit years after a cause of action has accrued, and of omitting to state in the libel the grounds of negligence relied upon at the trial, cannot be too strongly deprecated. The libelants in such cases are entitled to little latitude. Their conduct results in loss of witnesses, impairment of memory, and surprise at the trial. In this case we think that the tugs acted in accordance with the usual practice known to all coal boatmen and owners of coal boats. It may well be that, if the hawser boat did not put out safe fasts originally, the respondent would be answerable for injuries resulting from that fact to the other boats in the tow; but certainly it would not be liable to the owners whose master was negligent in making fast.

The District Judge rested his conclusion on Hughes v. Pennsylvania R. Co. (D. C.) 93 Fed. 510, and Id., 113 Fed. 925, 51 C. C. A. 555, which was a' very different case. There the tug hung up the tow at the Battery, and did not return in a thick fog which ensued, although she knew the tow would swing around in that crowded thoroughfare and be perfectly helpless to protect itself from collision, which was what actually occurred. We see no reason for the tugs in this case to expect that the tow would get adrift on the turn of the tide, if the libelant's master had attended to his duties.

The decree is reversed, with costs.