BRADLEY et al. v. SULLIVAN et al. (two cases).

(Circuit Court of Appeals, Sixth Circuit. December 11, 1913.)

Nos. 2,383 and 2,384.

1. COLLISION (§ 70*)—VESSEL BREAKING FROM MOORINGS—BURDEN OF PROOF.

A vessel which broke from her moorings and injured other moored vessels by collision is liable therefor unless the owners affirmatively show the exercise of proper care and that the breaking away and drifting were the result of inevitable accident.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 91–100; Dec. Dig. § 70.*]

2. COLLISION (§ 74*) — VESSEL BREAKING FROM MOORINGS — INEVITABLE ACCIDENT.

Evidence considered, and held not sufficient to establish the claim that the breaking from her winter moorings of a vessel during high water, resulting in collisions and injury to other vessels, was due to inevitable accident.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 104; Dec. Dig. § 74.*]

Appeal from the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

Suits in admiralty, by Lafayette S. Sullivan and George H. Breyman, and by Lafayette S. Sullivan and another, as owners of the steamer Rust and the schooner Barnes, respectively, against the steamer Alva; M. A. Bradley and others, claimants. Decree for libelants, and claimants appeal. Affirmed.

Goulder, Day, White, Garry & Duncan, of Cleveland, Ohio (H. D. Goulder and T. H. Garry, both of Cleveland, Ohio, of counsel), for appellants.

W. S. Thurstin, Jr., of Toledo, Ohio, for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. These appeals bring under review the facts and the applicable law touching the breaking away of the steamer Alva from her winter moorings in the Maumee river at Toledo, and drifting downstream until through collision with the steamer Rust and the schooner Barnes the three vessels were carried to points down the river where they stranded and sustained injuries. Two actions were brought in the court below against the Alva, one by the owners of the Rust, and the other by the owners of the Barnes; and answer was filed to each libel by the intervening owners of the Alva; but the cases were heard together and on the same evidence. The findings below were against the Alva, the damages in each case ascertained, and decrees entered. The owners of the Alva appealed in each case, the appeals were consolidated by stipulation, and will be disposed of here, as the two cases were below, in one opinion.

The three vessels in issue were moored on the west side of the river, the Alva at the Pennsylvania dock, and the Rust and Barnes

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

209 F.—53

at the Hocking Valley dock. The Alva was 324 feet long, 42 feet beam, 2,000 net tonnage, and had on board a cargo of about 70,000 bushels of flaxseed. The Rust was 201 feet long, 33 feet beam, 666 net tonnage; the Barnes was 460 net tonnage; and these two vessels were each without cargo. The Alva stood some 400 feet further up the river than the Rust, and the Barnes stood astern of the Rust; each vessel, it need not be said, having been moored with its bow upstream.

[1] The libels charge negligent mooring of the Alva. The answers deny this and aver inevitable accident due to an extraordinary flood with ice floating in the river. Thus collision and injury were admitted; and, since these were direct results of the breaking of her moorings and drifting downstream (Slyfield v. Penfold, 66 Fed. 362, 364, 13 C. C. A. 512 [C. C. A. 6th Cir.]), the Alva was liable unless her owners could show affirmatively that the drifting was the result of inevitable accident (The Louisiana, 3 Wall. 164, 173, 18 L. Ed. 85; The William E. Reis, 152 Fed. 673, 676, 82 C. C. A. 21 [C. C. A. 6th Cir.]; The Olympia, 61 Fed. 120, 122, 9 C. C. A. 393 [C. C. A. 6th Cir.]; The Waterloo, 100 Fed. 332, 40 C. C. A. 386 [C. C. A. 3d Cir.]; Campbell v. Pennsylvania R. Co., 85 Fed. 462, 29 C. C. A. 268 [C. C. A. 2d Cir.]; The Lincoln, Fed. Cas. No. 8,354, opinion by Judge Lowell).

[2] Plainly the appellants have not shown that the accident was due to inevitable causes, unless the evidence proves that they exercised such care and prudence in mooring the 'Alva as the circumstances required. The Alva was driven from her moorings about 1 o'clock on the morning of January 23, 1904. The river was at the time about two feet above the normal, and the ice was in motion; but the crest of the flood was not reached until some hours after these boats had been set adrift and the substantial damages sustained. The evidence relating to the disruption of the moorings centered at last upon the size and condition of certain piles, two in number, to which the anchor chain, the mainstay of the Alva, was fastened. The chain had been passed from the starboard hawsepipe, and extended forward to and fastened about these piles. Although lines additional to those previously maintained on the Alva had, shortly before the accident, been put in place in anticipation of a rise and floating ice in the river (of which warning had been received by the owners), yet the stress due to the pressure upon the Alva came upon her anchor chain and the piles to which it was fastened as stated. The piles broke, the one nearest the boat first and then the other, when the remaining lines gave way. The Alva drifted downstream until she came into contact with the Rust. Four more lines were then put out to fasten the Alva to timbers lying back of the Hocking Valley dock. The pressure of the ice subsequently carried away both the Alva and the Rust, the anchor chain of the latter breaking, but not the piling to which it was fastened. This resulted, as stated, in striking and carrying away the Barnes. The relative dimensions of these vessels in connection with the cargo of the Alva easily account for such a result.

We shall not review the evidence, for this in effect would be to

repeat the discussion of the court below. Judge Killits' analysis of the facts pertinent to the lack of care and precaution alleged in respect of the mooring of the Alva and his conclusion in that behalf seem to us to be justified by the record. The strength of his opinion cannot be met by criticism of the undisclosed character of a witness, any more than it can by similar treatment of an immaterial mistake like that concerning the location of the Barnes. If the Rust and the .Barnes. had in fact been "lying side by side," the 'result, as also its cause, would have been the same.

From these considerations it is enough to conclude, as we do, that the owners of the Alva have not sustained the burden which the law imposes upon them. The Edmund Moran, 180 Fed. 700, 702, 104 C. C. A. 552 (C. C. A. 2d Cir.); The Olympia, supra, 61 Fed. at page 122, 9 C. C. A. 393). Further, even as respects the causes relied on as inevitable, the appellants failed to show that the flood and floating ice were unprecedented. Not only had the river in thawing seasons reached higher stages than the level attained by this flood (which occurred several hours after the accident now in question), but at the time the Alva's moorings gave way the stage of the river was well within not infrequent past experiences; and the conditions prevailing during both of these latter stages were anticipated and overcome by those in control of other vessels then moored in neighboring portions of the river and equally exposed. Certainly nothing more is needed to establish the fact that the accident was not inevitable.

The decree in each case is affirmed, with costs.