THE GANOGA.

THE BESSIE.

(Circuit Court of Appeals, Second Circuit.   April 16, 1919.)

No. 177.

TOWAGE ☞11(10)—LIABILITY FOR INJURY TO TOW—INSECURE MOORING.

A tug, which left a number of boats in tow fastened to a pier by a slip line over a pile, while she went after others, *held* in fault for injury to one of the boats by collision with another pier after the tow had gone adrift on the rising tide and in a high wind, which caused the line to slip over the top of the pile, on the ground that under the circumstances she should have seen that the tow was more securely fastened.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Red Star Towing & Transportation Company against the steam tug Ganoga, the Lehigh Valley Transportation Company, claimant, with the boat Bessie, McWilliams Bros., Incorporated, claimant, impleaded.  Decree for claimants, and libelant appeals.  Reversed.

Burlingham, Veeder, Masten & Fearey, and Chauncey I. Clark, all of New York City (Charles E. Wythe, of New York City, of counsel), for appellant.

Harrington, Bigham & Englar, of New York City (Dix W. Noel, of New York City, of counsel), for the Ganoga.

Herbert Green, of New York City, for the Bessie.

Before WARD, ROGERS, and MANTON, Circuit Judges.

WARD, Circuit Judge.  February 3, 1917, the tug Ganoga hung up a flotilla of eight light canal boats on a pile at the lower corner of the river end of the Gamecock Pier, Jersey City, to become a part of a larger tow to be subsequently taken to Perth Amboy.  The master of the tug ordered the captain of the port hawser boat Bessie, which was nearest the pier, to make his line fast from her bow to the pile, and this was done; the eye of one end of the line being fast to the boat's bitts, the other end, after passing around the pile, being brought back to the bitts and made fast.  This is called a slip line, and is generally used because it can be easily let go from the boat without any help from the pier when the tow is ready to start.  The tug then left to get more boats, and when she returned found that the whole flotilla had gone adrift and had collided with Pier 1, North River, the boat Red Star No. 19 sustaining damage, for which this libel was filed against the tug.  The tug brought in the boat Bessie under the fifty-ninth rule, charging her with fault in the manner of making fast, and charging both her and the Red Star No. 19 with fault for not having anchors.

The time of the arrival of the flotilla at the Gamecock Pier and the time of the return of the tug, when she discovered the drifting, are important with reference to the stage of the tide and the force of the wind.  The master of the tug says he arrived at 10:30 p. m. of Feb-

ruary 3d on half flood and upon his return at 1 a. m. of the 4th he found the boats had got adrift. As it was not low water until midnight of the 3d, he could not have arrived at any stage of the flood tide until after midnight. A record of the times of the tug's movements being kept, the claimant could have proved them exactly, if it had chosen to do so. Therefore we adopt the testimony of the master of the Red Star No. 19 that the flotilla arrived at midnight of the 3d and got adrift about two hours afterwards on the rising tide.

The testimony is uncontradicted that when the flotilla was made fast a high wind was blowing it out into the stream, and the weather report shows that at midnight of February 3d the wind was blowing from the southwest at 39, and at 2 a. m. of the 4th at 36, miles an hour, a moderate gale by the Beaufort scale. It is also uncontradicted that the deck of the Bessie was above the top of the pile around which her line was passed, and that the line did not part. The captain of the Bessie testified that the deckhand of the tug passed this line around the pile, and that he saw him pass it under the line of another boat lying at the pier, whose line had a bight around the pile, and that when the tow was brought back he saw that the other boat had merely a slip fast. To accomplish such a thing it would be necessary for those on the other boat to let go their own line and for some person or persons on the pier to get the bight of the line free from the pile and hold the boat against the wind and sea until some other people lifted the Bessie's line from the pile and held the eight boats against the wind and sea until the line of the other boat had been slipped around the pile and the line of the Bessie replaced above it.

The District Judge held that it was physically impossible for the Bessie's line to have slipped over the pile; i. e., that it must have been removed by human agency and replaced in the manner above described. If he was right in this, then neither the Bessie nor the tug would have been at fault. We reject, however, what seems to us to be an extraordinary, motiveless, and almost incredible explanation, in favor of the very natural one, viz. that the Bessie's line led down to the pile and around it, over the line of the other boat, and the Bessie, by tossing and surging on the rising tide, passed it over the top of the pile.

It is quite true that the flotilla was made fast in the usual way by the Bessie and that her line did not part; also that the tug was not an insurer of the tow, but only owed it ordinary care. If the Bessie was at fault in making fast, the tug would not be responsible for any damage caused to her thereby, though it might be to the other boats. McWilliams v. P. & R. Co., 203 Fed. 859, 122 C. C. A. 84. The Bessie's line was good, did not part, and was made fast in the usual way. The negligence, if any, was in the failure to foresee that the Bessie, tossing and surging in such wind and weather, with her deck higher than the top of the pile, would be likely on the rising tide to slip the line over the pile. Under these circumstances we think ordinary care required that a better fast than the usual slip fast should have been made, and that the tug was at fault for not seeing to it, whereas boatmen could not be held at fault for want of such nautical skill.

257 F.—46

The claimant of the tug does not press the charge that the Bessie had no anchor, and Red Star No. 19 had none which could be used, so that we need not consider the question.

The decree is reversed, and the court below directed to enter the usual decree in favor of the libelant.