## THE NO. 225. THE KINGSTON. RICE v. ERIE R. CO. et al.

### (District Court, S. D. New York. November 3, 1920.)

1. **Collision ⊛➡71(3)—Boat tied up outside of others liable for breaking of their lines.**

   A charterer, which tied up a lighter to the outer boat of a tier moored to a pier, *held* liable for a collision caused by the parting during a high wind of one of the lines by which the boat to which the lighter was tied was secured to the next inner boat, allowing the lighter to swing around against another tier of boats.

2. **Collision ⊛➡71(3)—Boat tied outside another assumes risk of breaking her lines.**

   The custom of tying one boat alongside another is merely a privilege, and imposes no duty on the crew of the inner boat to make it secure enough to hold both, but such duty rests on the outer boat.

In Admiralty. Suit for collision by Jacob Rice, owner of the barge Mabel, against the Erie Railroad Company's Barge No. 225, with the Hudson River Bluestone Company's lighter Kingston and the Pennsylvania Railroad Company impleaded. Decree for libelant, against the Pennsylvania Railroad Company.

Macklin, Brown & Purdy, of New York City, for libelant.
Herbert Green, of New York City, for Erie R. Co.
Kirlin, Woolsey & Hickox, of New York City, for petitioner.
Burlingham, Montgomery & Beecher, of New York City, for Pennsylvania R. Co.

KNOX, District Judge. On the afternoon of February 25, 1916, Erie Railroad barge 225 was the outside boat of a tier of two·or three other barges moored to the southerly side of Pier 4, Bush Docks, Brooklyn. Farther along the pier, and nearer to the bulkhead, there lay a flotilla of four barges; the outside boat being the Mabel.

While thus positioned, a Pennsylvania Railroad tug, having in tow the lighter Kingston, arrived at the pier and tied the newcomer alongside the 225. When this was done, the latter further secured her lines by. giving them an additional hitch from her bitts to ·the boat lying to her starboard, with the result that she had three strands of the same line securing her to the starboard boat.

The Kingston was owned by the Hudson River Blue Stone Company and was under charter to the Pennsylvania Railroad Company. She carried two men, one being the master usually found aboard boats of her class, and the other was present for the purpose of "looking after Pennsylvania Railroad business." When the Kingston was securely made fast to the 225, the tug departed. The several barges and the lighter retained their respective positions until about one o'clock of the

---

following morning. Prior to this hour, however, the fresh northwest wind that had been blowing when the Kingston was placed increased its velocity to about 40 miles per hour and threw a considerable sea against the boats nearest the pier's end.

The strength of the wind and the sea were such that at the hour stated the bow line of 225, made fast to the barge lying to her starboard, gave way, with the result that the Kingston and the 225 swung around on the latter's stern line, so as to allow the Kingston to collide with and damage the Mabel.

The libel herein was filed by the Mabel's owner against the 225, and the latter, under the fifty-ninth rule (29 Sup. Ct. xlvi), impleaded the Kingston; her owner in turn brought in the Pennsylvania Railroad Company. As against the 225 it is asserted that she was fastened to the barge lying to starboard with insufficient lines, and that thereby the accident was brought about. The 225, through her master, alleges that the Kingston was warned not to rely solely upon the lines made fast to the 225, but that she should, in addition thereto, run a breast line to the pier. The captain of the Kingston denies this, saying that it was impossible, owing to the height of the boats, to run a line to the pier. He says that he has no recollection of having been asked to seek another berth, as to which there is some testimony upon behalf of the 225.

[1, 2] Inasmuch, however, as I am disposed to impose liability for the Mabel's damage upon the Pennsylvania Railroad Company, I hardly think it necessary to enter upon a discussion of the charges and counter charges made by the respective barge captains as against each other. It is enough to say that, so far as the evidence goes, the lines of the 225 were quite sufficient to withstand the wind and sea, had they not been subjected to the strain put upon them by the presence of the Kingston. It seems to me that it was the duty of the Pennsylvania Railroad Company, which had complete custody and control of the Kingston, to see to it that the lines of the boat to which she made fast were amply able to successfully resist any additional weight and strain that such mooring and changes in weather which might reasonably be expected would entail. If such precaution was not observed, or if, being observed, a mistake of judgment was made by the Kingston's captain, and the accident resulted therefrom, I do not believe that the 225, called upon as she was to bear an additional burden, should be compelled to respond, even to the extent of half damages.

This conclusion is reached, inasmuch as it does not seem fair to impose upon a moored boat the obligation of strengthening and perhaps putting out additional lines, so as to take care of all comers. If such obligation once be admitted, it may well be that boats may be required to carry lines far in excess of those reasonably necessary to safely moor and care for themselves. Such authority as I have been able to find would seem to support this view of the case.

In Pope v. Seckworth (D. C.) 47 Fed. 830, it was said that the custom, if such it be, of tying up one craft to another in a river, is merely a privilege, and imposes no duty upon the crew of the inner craft to make it secure enough to hold both. Whereupon it was held that, where

the owner of a flatboat, in attempting to land by fastening to a barge, breaks the lashings of the latter and draws it into the current, he is liable for the resulting damage.

So, too, in The Atlas (D. C.) 115 Fed. 856, it was adjudged that a barge was negligent in remaining tied up on the outside of five others; the inner one only being fast to the pier, during a stormy day, with the wind blowing at a high velocity from the side, and is liable for a collision caused by her swinging around on the parting of the line by which the stern of the inner boat was held to the pier.

I do not think there is any justification for the contention, urged upon the trial, that the damage in this case arose from inevitable accident. The pier in question squarely faced a northwest wind, and, as I recall the testimony, storm warnings were displayed on the afternoon upon which the Kingston was placed.

The libelant may have a decree against the Pennsylvania Railroad Company, with costs to the libelant and the claimant.