## THE THEODORE SMITH.

(District Court, E. D. New York. February 11, 1921.)

**Towage ⬅═11 (10)—Tug not negligent in mooring tow outside other boats.**

A tug, which moored a lighter outside of six other boats lying at a bulkhead, *held* not liable for damage caused when a cleat on one of the inner boats gave way and allowed the line of boats to swing downstream with the ebb tide and come into collision with other boats moored below, where the weather was calm and there was no indication that the fastenings of the other boats were not sufficient.

In Admiralty. Suit by William W. Aldrich against the steam tug Theodore Smith; the Messick Towing & Transportation Company, claimant. Decree for respondent.

Macklin, Brown, Purdy & Van Wyck, of New York City (Pierre M. Brown, of New York City, of counsel), for libelant.

Frederick W. Park, of New York City, for claimant.

CHATFIELD, District Judge. On the 7th day of November, 1919, at about 1 p. m., the tug Theodore Smith landed the lighter McAllister Bros. No. 35 outside of six boats made fast to a bulkhead on the Jersey side of the river in the basin or slip south of the Ninth Street Pier. The McAllister was almost directly up the river from the barge William F. Monk, which was the center of three boats lying abreast on the north side of the coal dock, which is the next pier down the river. The tide was running ebb, and the Smith, having observed that the six barges appeared properly moored and that there was no sign of approaching danger or bad weather, left the barges. Shortly thereafter a cleat started on the upper corner of one of the inside barges, the boats swung down the river, striking the Poland, the outside barge of the three below, squeezing the Monk against the inside barges, and inflicting damage for which this action is brought.

The libelant contends that the tug was responsible for putting a boat at the outside of a flotilla and thus throwing additional strain upon the lines of the inside boat, without either running lines over the decks of the other boats to the bulkhead, or without seeing that the fastenings of the inside boats were adequate. This accident happened within 30

---

minutes after the time the tug left the barge, and the conditions of wind and tide were not such as to indicate that the addition of one barge would of itself cause such a strain upon the lines that they might reasonably have been expected to break.

If the McAllister had been there for a considerable time, and her master could properly be held negligent for failing to observe the circumstances and the condition of the fastenings of the inside boats, responsibility for the accident would rest upon the McAllister, if that negligence was the proximate cause of breaking away. Bradley v. Sullivan, 209 Fed. 833, 126 C. C. A. 557; The Ganoga, 257 Fed. 720, 169 C. C. A. 8. See, also, McWilliams v. Philadelphia & R. Ry. Co., 203 Fed. 859, 122 C. C. A. 84.

It was held in The Rambler (D. C.) 87 Fed. 784, that a tug was responsible for damage expectable at the time of mooring a barge; and in Rice v. Erie Railroad Co., 272 Fed. 130 (So. Dist. N. Y., Nov. 3, 1920), a Pennsylvania tug towing the Kingston was held responsible for failure to see that proper lines were run when the Kingston was left alongside of an Erie barge lying outside of two tiers of boats at the Bush Docks in Brooklyn. The ground of imposing liability upon the Pennsylvania Railroad was not only that it owned the tug placing the barge in this position, but it also had the barge under charter and was responsible for the lines put out by that boat. The relevancy of the case to the present situation is that the court says:

"It does not seem fair to impose upon a moored boat the obligation of strengthening and perhaps putting out additional lines so as to take care of all comers. If such obligation once be admitted, it may well be that boats may be required to carry lines far in excess of those reasonably necessary to safely moor and care for themselves"—citing Pope v. Seckworth (D. C.) 47 Fed. 830; The Atlas (D. C.) 115 Fed. 856.

In the Rice Case, supra, responsibility of the owners of the tug was not distinguished from their responsibility as charterers of the barge, and a great change in the weather made it evident that the situation was not viewed from the standpoint of the tug's responsibility for mooring the barges under conditions where no danger would be apprehended.

It does not follow, from cases like Doherty v. Pennsylvania Railroad Co. (D. C.) 261 Fed. 529, affirmed December 15, 1920 (C. C. A.) 269 Fed. 959, that a tug, having boats in tow and mooring them under apparently safe conditions, is thereby rendered responsible for what may happen under a change of conditions, unless the barges are shown to remain by contract under the care and in the custody of the owners of the tug, and that conditions arose from which they should have apprehended danger, but which they neglected to guard against.

In the present case considerable dispute arose on the trial as to events at the time when the drifting boat struck the Poland, and hard feelings were then engendered, which affected the judgment of the men upon the boats. But there seems to be no issue of fact presented affecting this issue, and upon the entire case the libel against the Smith should be dismissed.