## BRIGHAM et al. v. CORNELL STEAMBOAT CO.

(Circuit Court of Appeals, Second Circuit. March 7, 1927.)

No. 194.

1. **Towage** ⊙�longrightarrow15(2)—**Tow, to recover from tug, must show injury was proximately caused by act or omission inconsistent with reasonable care and skill, impliedly promised.**

To permit recovery by tow from tug, tow must bear burden of affirmatively showing that injury received was proximately caused by some act or omission of tug inconsistent with reasonable care and skill, impliedly promised under towage contract.

2. **Towage** ⊙⟶11(10)—**Tug must safely moor tow.**

The duty of a towing tug is not fulfilled until tow is safely moored.

3. **Towage** ⊙⟶11(10)—**Tug held not liable for injury to tow properly moored, because of having added second tow thereto.**

Tug *held* not liable for injury to tow properly moored, because of adding second tow thereto, since reasonable inference is that proper lines were not watched and renewed by barge crews, against which carelessness, or lack of skill, towing master did not contract.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Henry R. Brigham and another, copartners doing business under the firm name and style of Brigham Bros., against the Cornell Steamboat Company. Decree for libelants and respondent appeals. Reversed and remanded, with directions.

Libelants own a brick scow, No. 4, which, with some 13 or 14 other boats, had been towed down the Hudson river by respondent's tugs and arrived off Fifty-First street, North River, on the afternoon of December 24, 1920. Some of the wharves in that neighborhood are known as the "brick market," and scows like No. 4 sometimes lie there for weeks awaiting customers. The boats in tow were for the most part in pairs abreast, and the flotilla was moored along the ends of the piers from Fifty-Fourth to Fifty-Second streets certainly, and perhaps somewhat lower. The tide

was ebb, so the head of tow was at the highest numbered street. The mooring was usual, and, as sworn to by the bargemasters, excellent. The intent was not to swing with the tide. Later in that day, respondent moored another flotilla of 8 boats (7 loaded and 1 light) to and alongside of the earlier arrivals. The whole number of boats, however (about 23), was smaller than many Hudson river tows, of boats of the same kind, that customarily are and long have been moored in the same way in the same region.

Between the late afternoon of December 24th and the early morning (apparently about 2:30) of December 27th, the weather was calm, and nothing climatic suggested danger. At this latter hour, however, some parts of the tow broke adrift, apparently the head of tow first; apparently, also (the evidence is far from clear), the head boats, drifting away from the pier head line, exerted a leverage on the boats lower down, so that an unascertained number, including No. 4, went adrift, and No. 4, being bumped by other craft, listed and dumped her cargo, to her own injury.

This suit is to recover the resulting damage, on the ground that the cause of loss was the addition to the original flotilla. The trial court found for libelants and respondent appealed.

Robert S. Erskine, Henry P. Elliott, and Kirlin, Woolsey, Campbell, Hickox & Keating, all of New York City, for appellant.

Bigham, Englar & Jones, of New York City (Leonard J. Matteson and Andrew J. McElhinney, both of New York City, of counsel), for appellees.

Before HOUGH, MANTON, and SWAN, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] To permit recovery by tow from tug in this, the ordinary assertion of tower's liability, the tow must bear the burden of affirmatively showing that the injury received was proximately caused by some act or omission of the tug, inconsistent with that reasonable care and skill impliedly promised when the towage contract concluded. That proof of negligence is often reached by inferences or presumptions from the facts proved is not opposed to the foregoing always applicable rule of law.

[2] The one fact here proved is that, after mooring the first tow in a manner not criticised or complained of by any material and persuasive evidence, the second tow was added thereto. It is quite true that the duty of a towing tug is not fulfilled until the tow is safely moored (The May Queen [C. C. A.] 298 F. 95), and equally true that mooring places customarily used, and mooring fasts thought sufficient have been proven unsafe and insufficient when some reasonably to be expected additional danger arose.

The most appropriate instance for this case is that where, on the turn of the tide, the strain on the mooring lines is too great. Where that danger appears when the tide turns, the natural inference is that the fasts were weak or ill placed, because the effect of the tide turn is to be expected and must be provided for. Hughes v. Penna. R. R. (D. C.) 93 F. 510. And the rule and resulting inference is the same when the insufficiency developed after additional boats had been attached to the moored tow. Penna. R. R. v. McWilliams (C. C. A.) 277 F. 798; McWilliams v. Davis (C. C. A.) 285 F. 312. But even in these cases of promptly appearing insufficiency, if it be affirmatively shown that the bargees chose and arranged the lines, the tug may be discharged. McWilliams v. P. & R. R. Co. (C. C. A.) 203 F. 859.

[3] In the present instance, however, there is no proof at all of poor, insufficient, or badly placed lines in the first instance, and it is admitted that the whole flotilla safely lay over at least four changes of tide in calm weather. The reasonable inference from this fact is that the lines, proper and sufficient in the first place, were not watched and renewed or replaced by the crews of the barges. Against carelessness or lack of skill of that kind the towing master did not contract.

Decree reversed, with costs, and cause remanded, with directions to dismiss the libel, with costs.