### AMERICAN SUGAR REFINING CO. v. CITY OF NEW YORK et al.

### O'BRIEN BROS., Inc., v. SAME.

Circuit Court of Appeals, Second Circuit. May 20, 1929.

Nos. 306, 307.

Bigham, Englar, Jones & Houston, of New York City (Leonard J. Matteson and A. J. McElhinney, both of New York City, of counsel), for libelant American Sugar Refining Company.

Alexander & Ash, of New York City (Edward Ash, of New York City, of counsel), for Shamrock Towing Co., Inc., and the J. J. McGuirl.

Courtland Palmer, of New York City, for appellee Jay Street Terminal.

Foley & Martin, of New York City (James A. Martin and Edward E. Elder, both of New York City, of counsel), for Bouker Contracting Co. and O'Brien Bros., Inc.

George P. Nicholson, of New York City (Charles J. Carroll, of Brooklyn and William J. Leonard, of New York City, of counsel), for City of New York.

John R. McMullen, of New York City, for appellee Scow Subway.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above). ▪ It neither is, nor can be, claimed that the Brazil, moored as it was, without any power whatever, could have avoided the collision or was in any way at fault. Nor is there any question about O'Brien Bros., Inc., being entitled to salvage for the final picking up and successful tieing up of the scows. We will assume, for the purposes of this case, without deciding, that the Bouker tug negligently left these scows insecurely moored at the bulkhead, and consider whether such negligence was the proximate cause of what followed. It is seen that the scow captains had one opportunity, after their fast had been disturbed, to tie up securely at the bulkhead, when the line was actually passed from the Subway to the mooring post. They then contented themselves with putting out this one line. After their lines parted, and they did go adrift, but before any damage was done, they were tied up in a manner they approved at Pier 4, Brooklyn, when the John J. Arbuckle picked them up and towed them there.

At this time, at least, common prudence should have dictated getting a fast which, in view of what had already taken place that night, would have made sure that their voyage was ended. If the bitt on No. 8 had been loosened, it is difficult to excuse these captains for being satisfied to use the bitt again, when they certainly knew of the strain to which it had already been subjected, and quite as certainly had the opportunity to tie up in whatever way then seemed to them to be secure. If the fast at Pier 4 was a prudent one, it is certain that any negligence of the Bouker tug at the bulkhead had spent its force before the flotilla again broke way. If the fast at Pier 4 was made negligently, the scow captains are chargeable with this negligence, because it was made to their satisfaction. McWilliams et al. v. Philadelphia & Reading Co. (C. C. A.) 203 F. 859, Brigham et al. v. Cornell Steamboat Co. (C. C. A.) 18 F.(2d) 92. In either event any negligence of the Bouker tug was the remote, rather than the proximate, cause of what followed.

▪ When the flotilla for some unexplained reason broke way from Pier 4 at the time when one of the lines parted and put all the strain on the bitt of No. 8, which then gave way, the scows drifted from there to South Second street, Brooklyn, where the Brazil was struck, without using or making any attempt to use the anchors they had. While it is true that the case did not show whether or not an attempt to anchor would have been successful, there was nothing to excuse the failure to try, or to excuse the failure to have any anchors whatever on two of the scows. Although neither libel expressly relied upon the failure to have or use anchors, the answer of the Bouker Contracting Company charged the scows with this fault, and no objection was made to the evidence in this regard which was introduced at the trial. The McGuirl and the No. 43 were unseaworthy and at fault for failure to have any anchors. The Panther (C. C. A.) 5 F.(2d) 64; The Sunnyside (C. C. A.) 251 F. 271; The M. E. Luckenbach (D. C.) 200 F. 630, affirmed (C. C. A.) 214 F. 571. To have anchors, as did

the No. 8 and the Subway, and without any excuse neglect to use them, puts these scows in a situation no better than that of the scows which had no anchors.

In the District Court the appellant was held on the theory that its negligence in leaving the scows at the Fourteenth street bulkhead caused the weakening of the bitt which gave way on the No. 8 at Pier 4, but we find nothing in the evidence to support this theory. The evidence shows only that this bitt had been subjected to sufficient strain at the bulkhead to break the line, but it does not follow that this same strain broke or weakened the bitt, or had any causal effect whatever on the drifting from Pier 4.

The decree of the District Court is modified, to hold the city of New York solely liable for the damage to the Brazil and for the salvage, to dismiss the libels against the Bouker Contracting Company, with costs, and in other respects it is affirmed.