## THE RUTHIE M.
## THE FLORENCE M.
## THE S. L. CROSBY.
## THE CITY.

### MORTON COAL CO., Inc., v. McLAIN LINE, Inc.

No. 12896.

District Court, E. D. New York.

June 7, 1932.

Purdy & Purdy, of New York City (John E. Purdy, of New York City, of counsel), for libelant.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, of New York City (Robert S. Erskine, of New York City, of counsel), for the S. L. Crosby.

Macklin, Brown, Lenahan & Speer, of New York City (R. F. Lenahan, of New York City, of counsel), for claimant impleaded.

GALSTON, District Judge.

On October 23, 1931, the Ruthie M. and the Florence M. were lying at the dock of the Morton Coal Company at the foot of Sixty-Seventh street in the East River. The barge City was brought alongside of the Florence M., the outer barge, by the tug S. L. Crosby. The Ruthie M. and the Florence M. had proper lines out to the bulkhead, and the Florence M. was tied to the Ruthie M. by means of cross lines and breast lines. At the time of the arrival of the barge City there was an available berth lying below the Ruthie M. at her bow, and likewise there was available a berth lying above at her stern; and there were no vessels in the vicinity which would have interfered with the placing of the barge City in either of those two berths.

The captain of the tug, when he brought the barge City alongside the Florence M., was warned against tying up to that barge. There was a strong flood tide, and the berth was in the vicinity of Hell Gate. Nevertheless, the barge City made fast to the Florence M. with six lines. No lines from the City ran to the bulkhead. Within fifteen or twenty minutes after the actual mooring of the City, the boats broke adrift, with consequent damage to the libelant's barges, Ruthie M. and Florence M.

The captain of the tug seeks exoneration on the ground that the berth was not of his selection. Prior to arriving at Sixty-Seventh street, he had asked the captain of the barge City where he wanted to land and was told that he desired to land outside of the two barges. After he got a line out to the Florence M., some one shouted from one of the barges objecting to his tying up. Thereupon the captain of the Crosby said to the captain of the City, "take your line in and I will put you back here," meaning alongside the dock. The captain of the barge, however, protested that he would not lie alongside the bulkhead because it was of stone with an outward downward slope, which might injure the barge. The captain of the City in short refused to permit him to change his position. The tug captain admitted, however, that even though he did not regard it as unsafe to leave three boats moored abreast of one another, in such circumstances it was necessary to have out "plenty" of lines.

The defense of the barge City is that it was perfectly safe for her to tie up alongside of the Florence M.; and that the accident arose, not because the barge City was improperly moored in that position, but because after she was tied up to the Florence M. the libelant sought to shift the lines, and while so doing, the barges broke adrift.

I find, in the contradiction of evidence on the latter question, against the contention

of the barge City. The captain of the barge City, while testifying that he saw some people shift the lines, was not convincing. He related a conversation with Wormser, the secretary of the coal company, at the dock. Wormser asked him why he did not tie up alongside the bulkhead, and the witness replied: "You stand the consequence of the damage, what happens; I will go." He then said he saw one or two men commence to slacken the lines between the Ruthie M. and the Florence M. He said he saw Wormser shifting the lines. This is denied by Wormser. That there was some talk between the representatives of the libelant and the captain of the barge about a plan to shift the outer barges seems likely in view of the statement made by the captain of the City after the accident, and also because of the fact that the libelant endeavored to reach the owner of the barge on the telephone. But, on the other hand, the captain's signed statement, made at or about the time of the accident, ascribes the accident to the strong tide which swung his boat out and away from the bulkhead, so that the line on the forward starboard cleat of the Ruthie M. to the dock was severed.

I appreciate the caution with which statements given by relatively ignorant persons should be received, but Franklin impressed me as being an intelligent person.

The testimony given by the captain of the Jeanette Louge, which was at the time of the accident moored at Stokes Dock, foot of Sixty-Ninth street, East River, lacks conviction. It is difficult to accept his story of the attempt of the libelant to loosen the lines, in view of the growing dusk and his distance away, and also by the fact that the cabins of the barges must have obstructed his view.

I think the accident was attributable, in the first instance, to the stubbornness of the captain of the barge City; and in the second instance, because of the failure of the tug to insist on having lines put out from the City to the Bulkhead.

At the conclusion of the trial I felt that the tug might have been exonerated, but on reconsideration I feel that her escape from responsibility is only as to the barge City.

As to the libelant's barges, I can find no authority which would excuse her, nor have I been furnished with any such authority by counsel.

In the case of Brigham et al. v. Cornell Steamboat Co. (C. C. A.) 18 F.(2d) 92, the controversy was between the tow and the tug. Such is not the situation here.

In the Matter of The Eastchester (C. C. A.) 20 F.(2d) 357, the tug sought to avoid responsibility "by showing delivery to the consignee and acceptance by him at a berth with the condition of which he was thoroughly familiar." But in the present instance, the consignee protested against the delivery alongside the barge Florence M.

In The Mary Ethel (D. C.) 290 F. 458, 461, Judge Campbell wrote: "The master of the Mahanoy owed a duty to the Thomas Bulger when he made her fast outside the Dutch Boy to see that the lines between the inside boats were sufficient and proper to hold her in the berth he selected, and, if in doubt, to have made her fast by proper lines to the bulkhead, as lines to the Gold street pier could not have held up her stern against the force of the tide. The William Guinan Howard, 252 F. 85, 164 C. C. A. 197; McWilliams Bros. v. Davis (C. C. A.) 285 F. 312. And his failure to perform that duty is chargeable to the Mahanoy, and she is liable for the damages suffered by the Thomas Bulger."

The pertinency of the foregoing quotation follows from the fact that there was some evidence in this case to show that if lines had been put out from the barge City to the bulkhead, the accident would have been avoided.

The wrong to the libelant was the joint act of the barge City and the tug. In such circumstances, exoneration cannot be had by one of the tort-feasors on the ground that he was involved in the tort by the judgment or act of the other tort-feasor.

The libelant may have a decree.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.