## THE HENRY BUCK.

### STOKES v. THE HENRY BUCK.

*(District Court, D. South Carolina. April 9, 1889.)*

TOWAGE—NEGLIGENCE—RAFTS.

A tug which undertakes to tow a raft to a certain place, and which leaves it before it arrives there, without ascertaining whether the raft is made fast or not, and without giving any order in relation thereto, is negligent, and is responsible where the raft is carried away by the tide and wind.

In Admiralty.

Libel by W. E. Stokes against the steam-tug Henry Buck, for damages for negligence in towing a raft.

*J. P. K. Bryan*, for libelant.

*J. N. Nathans,* for respondent.

SIMONTON, J. - This libel is for negligence in towing a raft of lumber. Whatever doubts the older cases may have created with respect to the jurisdiction in cases of this character, the later cases have removed all of these. *The F. & P. M. No. 2,* 33 Fed. Rep. 511. In dealing with the question of negligence, the tug cannot be treated as a common carrier. Negligence must not only be alleged, but proved. *The Webb,* 14 Wall. 406. The libelant was under contract to furnish lumber to E. L. Halsey, in Charleston. He sent a raft consisting of 41 bulls from Colleton county, on the Edisto river. The raft having been delayed, the agent of libelant, on 6th December last, sent the tug Henry Buck to look for it. The tug returned, not having found it. On the 15th of December the agent of libelant called up the tug's master by telephone, and, telling him that the raft had been heard from, requested him to go for it, and bring it to Charleston. On the 17th of December the tug went, and found the raft at Church flats,—a part of the coast inland navigation, about 15 miles from the Stono river. The raft was in charge of an experienced pilot and five hands, two of whom, at least, had large experience in the business of rafting lumber from the Edisto river to Charleston. Reporting to the pilot that he had been sent for the raft, and taking it in tow, the tug-master and the tug proceeded down the stream to Stono river, crossed the river, and stopped at the mouth of Elliott's cut, a navigable stream connecting Stono river with Ashley river. Owing to reasons of no importance to this opinion the ebb-tide sets from this entrance of Elliott's cut on the Stono towards the Ashley river. Rafts passing through without a tow enter the cut on the early ebb-tide, and float until they reach near the entrance into the Ashley. There they wait until the very last of the ebb, go out into Ashley river, and take the flood-tide up. On the present occasion the tide was near dead low water. The tug-master ordered the hands to tie up on the bank, and then left to go to town. The men on the raft say that he informed them that he would return at high water. He says that he told them that he would return the next day. At all events, he did come back at high water, because, as the master says, the wind was high, and he was uneasy about the location of the raft. Reaching the raft at high water, about 7 P. M., the tug pulled it off, and allowed it to drop down with the tide in Elliott's cut. The raft proceeded down the cut with the tide, the tug following until it reached a point known as Quigley's, where the tug passed it. The tug-master and his mate say that the raft had stopped. Whether it was made fast or not they did not know. The fireman says that while the tug was passing the raft continued to float. The three say that the tug-master informed the raftsmen that he would come back the next day for them. All the raft-hands say that the tug-master told them to keep on down, and that he would meet them, and take hold at the entrance of the cut into the Ashley river. This was about half past 8 P. M. The tug went on to Charleston. The raft proceeded to Ashley river. The tide was ebb, going out fast to the sea. The raft could not

stop. The tug not being there, it proceeded rapidly on the falling tide, aided by a strong west or north-west wind, towards the bar. When off the Battery, two men in a small boat were sent ashore to inform the agent of libelant of the disaster. The rest of the men on the raft went on, and in response to their cries for help were rescued just before reaching Fort Sumter. The raft was beached on Sullivan's island. The larger part of it, with labor and expense, was saved by libelant. The news of the disaster was published in the daily papers of the 18th. The tug made no effort to go after the raft, or to save any part of it, and no report was made to libelant or his agent. The tug-master explained this by saying that he heard Mr. Halsey, agent for libelant, say through the telephone on Tuesday, 18th, that he had had enough of the Henry Buck. Mr. Halsey says that he did say this, but that it was on the Friday following, just a half hour before he hired the tug Maryland to tow back the raft. The weather on the 17th began with a gale early in the morning, followed by a heavy fog and a south-west breeze, with westerly and north-westerly wind pretty high in the afternoon and evening. A raft lying in the cut ahead of this raft, waiting for the tide, as has been described, passed over safely after the ebb-tide had run out.

These are the facts of the case set out in the testimony. It is full of direct contradictions on material points. The most material of these is as to what occurred when the tug passed the raft in the cut. All the raft-hands were on the raft. Three of them had large experience in these waters. They dropped down the cut on the ebb-tide not half out, with a strong west wind blowing. Unless they expected to meet the tug at Ashley river, they must have expected the result which followed, drifting rapidly to sea at the risk of their lives. It is impossible to believe that they did not expect to meet the tug when they reached Ashley river. On the other hand, the tug-master, his mate, and fireman, deny that the master said that he would wait for the raft as they state. Fortunately it is not necessary to decide this conflict. It is clear that the tug passed the raft, and left it; her master, who had undertaken to tow it to Charleston, and who was in full charge of it, not knowing or stopping to know whether the raft had been made fast or not, and not having given any order to this effect. He left it, also, without giving his orders in such a way that they could not be misunderstood. This was negligence, for which the tug is responsible. As to the amount for which it is responsible, counsel will be heard on this point, and especially as to the liability of the respondent for the demurrage paid by libelant to Mr. Halsey under his contract with him.