### THE WILLIE.

(Circuit Court of Appeals, Second Circuit. December 12, 1910.)

#### No. 9.

TOWAGE (§ 11*)—INJURY TO TOW LEFT AT PIER—LIABILITY OF TUG.

A tug which left her tow at a pier where she was at the time, and for some hours thereafter, entirely safe, *held* not liable for her subsequent injury due to a change in the direction of the wind.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Edward G. Murray as owner of the canal boat George Emsley against the Shepard & Morse Lumber Company and the steam tug Willie, Charles W. Bridgins and others, claimants. Decree for respondents, and libelant appeals. Affirmed.

On appeal from a decree of the District Court for the Southern District of New York, dismissing the libel in an action brought by the owner of the canal boat George Emsley against the Shepard & Morse Lumber Company and the steam tug Willie to recover damages sustained by the canal boat on the 1st day of February, 1908, while lying at the pier at the foot of Twenty-Eighth street, South Brooklyn.

Wray & Callaghan (Albert A. Wray, of counsel), for libelant.

Conway & Williams (Charles F. Williams and Eustace Conway, of counsel), for the Lumber Co.

Alexander & Ash, for the Willie.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The controlling question is—was the tug negligent? If not, there can be no recovery. The cause was tried in open court the witnesses appearing before the District Judge. The principal fault charged against the tug is that she left the canal boat moored at the pier at Twenty-Eighth street when she should have placed her in the Richards Basin. The owners of the tug insist that the contract was to tow her to the foot of Twenty-Eighth street and that they expressly declined to put her into the basin because it was congested, explaining that:

"Richards was hauling boats from Twenty-Eighth street and putting them in the basin where he could take charge of them."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The canal boat was left on the south side of the Twenty-Eighth street pier. The master of the tug says that she arrived there in the morning about 11 o'clock. The canal boat owner says she did not arrive until 12:30. At 11 o'clock the wind was SE, blowing 35 miles per hour; at 12 o'clock it was SE, 29 miles; at 1 o'clock it was S, 26 miles; at 2 o'clock it was W, 26 miles. It was not until 2 o'clock, therefore, that the wind hauled around to the west and continued west until about 11 o'clock that night. There was no danger to the canal boat at the pier from a south or southwest wind as it came over the land and the pier was sheltered by a high bluff. The court found that the tug could not have taken the canal boat into the basin and that when the tug left the canal boat at the pier it was with the consent and approval of her master, at a time when the conditions were perfectly safe and when she could have gone into the basin, using the local facilities, if her master desired to place her there. There was no reason at any time prior to 2 o'clock to apprehend a change of wind to the westward and the damage which occurred from that cause. The canal boat captain had from one to two hours to get his boat into the basin before the wind shifted. Bearing in mind that the tug was only bound to exercise ordinary skill and care, we agree with the District Judge in thinking that she is to be judged by the conditions existing at the time she left the canal boat at the pier, when there was no reason to apprehend danger.

The libelant testified that when the charter was made Mr. Hudson agreed to return the Emsley "in the same condition she was in at the time he took her, ordinary wear and tear excepted." Mr. Hudson denies that anything of this kind was said during the conversation, which was by telephone. The District Judge did not discuss this testimony in detail. Quite likely he thought such a course unnecessary, in view of his finding that the delivery of the Emsley in good condition at the pier at the foot of Twenty-Eighth street was sufficient. The two witnesses were in sharp conflict and it is evident that if the judge had believed that the charter contained the conditions now insisted upon by the libelant he would have so stated in his opinion. We are of the opinion that the charter was a simple bailment for hire.

There was a conflict of testimony as to the conditions at the basin, as to what took place when the canal boat was left at Twenty-Eighth street pier, and upon several other minor points. We think, however, that the preponderance of proof sustained the conclusions of the District Judge.

The decree is affirmed with costs.

NOTE.—The following is the opinion of Adams, District Judge, in the court below:

ADAMS, District Judge. This action was brought by Edward G. Murray against the Shepard & Morse Lumber Company and the steamtug Willie, to recover damages sustained on the first of February, while the libellant's boat, the canal boat George Emsley, was lying at a pier at the foot of 28th Street, South Brooklyn.

The charges are that the Emsley was towed to the foot of 28th Street and there made fast to the pier at a time when the wind was blowing a heavy gale, which continued for some time, causing the canal boat to chafe against the pier, breaking her top, and so forth; that at the time the canal boat was

sound and strong and seaworthy; that the pier was exposed to winds and was a dangerous and unsafe place for a boat of her character to be made fast in bad weather. Such is the substance of the libel.

The faults charged against the Lumber Company are:

(1) That they allowed the Willie to place the canal boat at the pier when there was a high wind.

(2) That it allowed the canal boat to remain fast to the pier.

(3) In that it did not return the boat to the libelant in good order and repair.

The charges against the tug Willie are:

(1) That she placed the boat at the said pier while there was a high wind and allowed her to remain there and suffer damages.

(2) That she made the boat fast to the said pier.

(3) That she did not remove the canal boat before she suffered damage.

(4) In that she did not tow the boat to Richards Basin as ordered and there leave it in a safe place.

The Lumber Company's defense is that it hired the Emsley from Mr. Murray by oral contract and that by the terms of such contract Mr. Murray and his agents and representatives were to retain control and to be in charge of the boat Emsley; that, thereafter, the tug Willie took the canal boat in tow to be towed to Richards Basin in Brooklyn, but without respondents' knowledge and consent the tug took her to the foot of 28th Street.

The answer of the owners of the Willie is that on or about the first of February, 1908, the Willie was engaged to tow the boat Emsley from the foot of 30th Street, North River, to the foot of 28th Street, South Brooklyn. That in conformity with said contract, the tug took the canal boat in tow at the place mentioned, proceeded on the voyage and duly arrived at the foot of 28th Street, South Brooklyn, where she left her properly secured. That the berth in which the canal boat was left, was a good safe one, and one which is, and has for a long time been, used for vessels to receive and discharge cargo. That the Willie carefully performed the entire duty for which she was engaged and was not guilty of any fault or act of negligence.

The testimony here shows that the canal boat was taken in tow at 30th Street, North River, by the Willie as alleged, and was towed on hawsers 75 or 100 feet in length to 28th Street, and she was to be taken, according to the shipping people to Richards Basin, which is in the immediate vicinity of 28th Street. Instead of taking her to Richards Basin the tug left her at the south side of the pier at the foot of 28th Street.

The tug was required, if practicable, to deliver the boat in Richards Basin and she did not do so. No excuse for that is pleaded, but the testimony shows that the tug in leaving her on the south side of 28th Street, did so as she could not take her into the Basin, because the Basin was congested, there being many canal boats in there, and, therefore, she left her at 28th Street.

There is a conflict of testimony as to the condition of affairs when the tug and tow arrived at 28th Street. It is said, in behalf of the canal boat, that the master when arrived there saw that the place was unsafe and told the captain of the tugboat not to leave him there. On the other hand, the captain of the tug says that the captain of the canal boat, instead of protesting at all, accepted the place that was found for him between two other vessels, and told the captain of the tug he was "all right," and allowed the tug to leave. I am inclined to believe that is so. I doubt very much, in the face of this testimony, whether the tug would have done such a foolish thing as to leave that canal boat there in an unprotected place where there was a strong wind blowing and a high sea prevailing. It is extremely unlikely and I reject the testimony that is put forward to establish that condition of affairs. On the contrary, I believe that when the canal boat arrived there, there was not anything to indicate any immediate danger. It is agreed here that at 9 A. M. the wind was east and the force 25 miles; at 10 A. M. it was from the same direction with a force of 32 miles. At 11 A. M. the wind was southeast with a force of 35 miles. At 12 the wind was southeast, with a force of 29 miles. At 1 P. M. the wind was south with a force of 26 miles. At 2 P. M. it had veered around to the west with a force of 26 miles and then from the same direction it ran around from 25 to over 40 miles during the afternoon.

There is no doubt but that a strong wind prevailed, the testimony shows it was the highest wind that had been there during the season. The watchman on the pier—a perfectly disinterested witness and one who seemed to me to be truthful—says it was the worst day of the year, that it was the worst storm and that the boat would have been dangerously exposed in the Basin assuming that it could have been put in there.

This being the state of affairs at that place and at that time the boat was left there, is there any liability shown here on the part of the tug? Of course it was her duty, under the contract, to take the boat to Richards Basin, but she says, and I believe truly, that she could not put the boat in the Basin because there was not room enough. She also says she could not go in herself, because there was not water enough, that is, in the Basin. She could have gone in from below, but that entrance was all blocked up with the boats, and the weather being calm when she reached there, she took the canal boat to a safe place on the south side of 28th Street and left her there in an easy position from which to get into the Basin if the canal boat wished to do so; and there were facilities for warping in there with her own lines.

On the other hand, the captain of the canal boat said—and I believe truthfully—that after the wind came up he could not move his boat, that he tried to get around the boat ahead of him but he could not handle his boat. The consequence was he was left there through the afternoon hours and during the night in the high wind and his boat was subjected to being forced against the wharf and chafed and damaged.

The only question in this case, in my judgment, is whether the tug was negligent. The tug did not say the canal boat would be safe even if it was shown that the Basin was the safer place. That has not been shown, because the watchman to whom I have just alluded, said the Basin was not any safer than the wharf, and although there is no proof of damage to boats that were in the Basin yet there is nothing to convince me that the canal boat might not have been damaged if she had been in the Basin. There is quite a sweep there for a westerly wind, there is very slight protection towards the west. I think the testimony shows there is but a slight "L" from the end of the 32d Street Pier, which is the south side of this Basin—not the 33d Street, as the diagram Exhibit No. 3 shows. There was a very slight protection there from the west wind, perhaps 100 feet or something like that, and the canal boat would not have been protected there, in my judgment, from a high west wind. There would have been considerable sea and she would have been just as liable there to be injured as on the south side of 28th Street.

The tug is not liable for the extra high wind. The captain, I think, left her on the south side of 28th Street in good faith and thought she was safe there and there was not anything at that time to tell him it was an unsafe place to leave the canal boat. The tugboat was not insurer of the safety of the canal boat. After she was left there the wind changed around, as I have already said, so that from an eastward direction in the morning it got to be westerly in the afternoon and it then became dangerous for this boat and it was injured. Whether the canal boat would have been injured in other place or not, we do not know. There is no testimony to show that any boats were injured in that Basin, but the Basin was just as much exposed to the wind from that direction as this wharf was and I think it quite likely the canal boat might have been injured had she been there.

The canal boat was injured at the wharf from the effect of the westerly wind. The tug was not obliged to anticipate a wind from that quarter. When he left the canal boat there the wind was from the east although later on it did work around.

Whether some other tug might have been secured to come to the relief of the canal boat does not appear. There has been some testimony that tugs are there in that vicinity all the time. But without attaching much importance to that testimony, I think the case can be decided upon the ground that there was no negligence on the part of the tugboat captain at the time he left the canal boat there and I therefore think she should not be held liable.

I therefore dismiss the libel as against both the tug and the Lumber Company.