## THE MARY ETHEL. THE MAHANOY. THE THOMAS BULGER.

(District Court, E. D. New York. · June 9, 1923.)

1. **Towage ⊙⇒11(10)—Master of tug responsible for not securely berthing barge.**
   Where the master of a tug having in tow a barge, selected as the berth of such barge a position adjoining three other boats, and made the barge fast to the outside boat, it was his duty to see that the lines between the inside boats were sufficient and proper to hold the barge in the berth he selected, and, if in doubt, to have made her fast by proper lines to the bulkhead, where the situation was such that, though the tide was flood and the weather clear, and not windy, the master of the tug must have known that with the change of tide the barge would be exposed to its full force, as but three feet of her beam was within the lines of the piers.

2. **Towage ⊙⇒11(10)—Tug liable for damage to boats by negligence in making fast tow.**
   A tug, which made fast its tow to the outside of three other boats, and by reason of its position such barge was exposed to the full force of the tide, and when the tide changed the lines between the two inside boats parted, and the three outer boats were carried down river and injured, *held* solely liable for injury to all the boats, which would not have occurred, had the barge not been made fast in such position.

3. **Towage ⊙⇒12(2)—Relative abilities of captain of tug and captain of barge considered in determining liability.**
   In determining the relative duty and liability of the captain of a barge and the captain of a tug, the court will take into consideration that the captain of the barge is not a navigator, but only a deck hand and keeper, and the barge will not be held responsible for the performance of a duty which the master of the tugboat, due to his superior knowledge as a seaman, should have known to be necessary.

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Towage �⊕15(2)—Evidence held not to show shifting of boats relieved tug of liability for injuries after mooring barge.**

In libel for damages to barge and to other boats, to which tug moored such barge, evidence *held* not to show the tug relieved of liability because of a shifting of the boats subsequent to the tug's mooring of its tow.

In Admiralty. Libels by Thomas Bulger against the National Lead Company, the barge Mary Ethel, and the steam tug Mahanoy, and by the Home Insurance Company against the barge Mary Ethel and the steam tug Mahanoy, in which the barge Thomas Bulger and the National Lead Company were impleaded. Decree in each action for libelant against the steam tug Mahanoy only.

Macklin, Brown & Van Wyck, of New York City, for libelants.

Alexander & Green, of New York City, for National Lead Co.

Foley & Martin, of New York City, for claimant of the Mary Ethel.

Bigham, Englar & Jones, of New York City, for claimant of the Mahanoy.

CAMPBELL, District Judge. These are suits in admiralty and were tried together. The first above entitled suit was to recover damages caused to the barge Thomas Bulger by collision when she went adrift by reason of the alleged negligence of the respondents. The second above entitled suit was to recover damages caused to the winch boat Dutch Boy, owned by the National Lead Company (the Home Insurance Company claiming by virtue of an alleged assignment from the National Lead Company) by collision when she went adrift by reason of the alleged negligence of the respondents and respondents impleaded.

The libel in the first suit was filed against all the respondents; in the second suit it was filed against the respondents barge Mary Ethel and steam tug Mahanoy, the barge Thomas Bulger having been impleaded under the fifty-sixth rule in admiralty (267 Fed. xxi) by petition of the Lehigh Valley Railroad Company of New Jersey, the owner of the steam tug Mahanoy, and the National Lead Company having been impleaded under the fifty-sixth rule in admiralty, on the petition of Timothy Donovan, the owner of the Mary Ethel.

On the 26th day of July, 1920, at about 6 a. m. standard time, the steam tug Mahanoy, owned and operated by the Lehigh Valley Railroad of New Jersey, having in tow the barge Thomas Bulger, which she had taken from Perth Amboy laden with coal consigned to the National Lead Company, foot of Hudson avenue, Brooklyn, made the said barge Thomas Bulger fast to the winch boat Dutch Boy, owned by the National Lead Company, on the outer side of said Dutch Boy, which was the outer boat of the three boats, the inner of which, the Bradley, was made fast to the bulkhead in front of the plant of the National Lead Company, and between her and the Dutch Boy was the barge Mary Ethel. The Mary Ethel was made fast on the land side to the Bradley, and the Dutch Boy was made fast to the Mary Ethel on her outer side.

We thus have the four boats extending out from the bulkhead between the Gold street and Hudson avenue piers, in the following order from the bulkhead: Bradley, Mary Ethel, Dutch Boy, and Thomas Bulger—and none of them was more than 15 feet from the Gold street pier. The distance between the Hudson avenue and Gold street piers is 280 feet, and, as none of the said boats exceeded 110 feet in length, the distance from any one of the boats to the Hudson avenue pier exceeded 150 feet. At no point along the side of the Hudson avenue pier toward Gold street was there more than two boats lying abreast alongside of the pier, or at an angle, and there was room to have placed the Thomas Bulger inside between the piers.

When the Mahanoy put the Bulger alongside of the Dutch Boy, the master of the Mahanoy made no effort to see what was the condition of the lines between the inside boats and the bulkhead, nor did he make the Bulger fast to the Dutch Boy by the direction of any one, but acted on his own initiative. At that time, it is true, the tide was flood, the weather clear, and no wind; but the master of the Mahanoy must have known that with the change of the tide the Bulger would be exposed to its full force, as but 3 feet of her beam was within the lines of the piers. The ebb tide runs very strong at the point where the boats were tied up, as it strikes across above the Hudson avenue pier from the New York shore, and sets in on the Brooklyn side to a distance below the Gold street pier. Between the Hudson avenue and Gold street piers there is little, if any, effect from the ebb tide. There was sufficient room to have taken the Bulger in between said piers and to have moored her in a safe berth near the Hudson avenue pier.

The deck hand of the Mahanoy and captain of the Bulger made fast the lines from the Bulger to the Dutch Boy. Said lines were good lines and were taut, and when the master of the Mahanoy asked the captain of the Bulger if he was all right, he intended to ask only if the lines from the Bulger to the Dutch Boy were all right as was customary, and the answer of the captain of the Bulger related only to those lines. The Bulger would have been just as conveniently placed for the National Lead Company up nearer the Hudson avenue pier as in the position in which she was placed.

The weight of the ebb tide against the stern of the Bulger which lay with her stern up the river caused a great strain on the lines between the several boats inshore of the Bulger. At about 9 a. m. standard time the lines of the Mary Ethel, by which she was made fast to the inside boat, the Bradley, parted and the then outside boats, the Bulger, Dutch Boy, and Mary Ethel, were carried down the river, and the Bulger and Dutch Boy sustained the injuries of which complaint is made. All of these boats were without motive power and helpless when adrift.

The lines of the Mary Ethel were good lines, and she is subject to no blame. The lines of the Dutch Boy were good lines, and she is subject to no blame. The lines of the Thomas Bulger were good lines, and were taut, and she is subject to no blame.

The National Lead Company did not fail to provide a safe berth for the Bulger, as she could have been safely moored between the piers near

the Hudson avenue pier, and no one representing the National Lead Company gave directions to the master of the Mahanoy to moor the Bulger outside of the Dutch Boy, nor did the master of the Mahanoy ask any instructions from any one representing the National Lead Company as to what berth he was to put the Bulger in, but acted on his own initiative. I am therefore unable to find wherein the National Lead Company was to blame.

[1] The master of the Mahanoy owed a duty to the Thomas Bulger when he made her fast outside the Dutch Boy to see that the lines between the inside boats were sufficient and proper to hold her in the berth he selected, and, if in doubt, to have made her fast by proper lines to the bulkhead, as lines to the Gold street pier could not have held up her stern against the force of the tide. The William Guinan Howard, 252 Fed. 85, 164 C. C. A. 197; McWilliams Bros. v. Davis (C. C. A.) 285 Fed. 312. And his failure to perform that duty is chargeable to the Mahanoy, and she is liable for the damages suffered by the Thomas Bulger.

[2] The Mahanoy is likewise liable for the damages suffered by the Dutch Boy, because it was the act of the Mahanoy in hanging up the Thomas Bulger on the outside of the Dutch Boy which caused the lines between the Mary Ethel and Bradley to part and the Dutch Boy to go adrift. Penn. R. Co. v. James McWilliams Towing Line (C. C. A.) 277 Fed. 798. The Mahanoy cites The Willie, 184 Fed. 279, 106 C. C. A. 421, as authority in her favor; but I cannot so hold, as in that case the tug was relieved because of changes some time after making the boat fast, which could not have been anticipated, whereas in the instant case there was no change, except the change of the tide which the Mahanoy should have anticipated.

[3] The Mahanoy also cites The Theodore Smith (D. C.) 271 Fed. 45, and Dailey v. Carroll, 248 Fed. 466, 160 C. C. A. 476, as to the duty of the captain of the Bulger; but I do not think they aid the Mahanoy, because the lines from the Bulger to the Dutch Boy were, as I have found, taut, and did not break until after the boats broke loose and were drifting downstream, and the captain had every reason to believe he was in a safe berth with proper lines, until it was too late for him to have done anything to relieve the situation. Had he been there over one ebb tide, he might have been chargeable with notice and under some duty as to inshore lines; but he was placed there on a flood tide, which his boat did not feel, and he could not, from the conditions then prevailing, anticipate what was to come. In determining the duty of the captain of a barge, we must remember that he is not a navigator, but only a deck hand and keeper of the barge, and not hold him responsible for the performance of a duty which the master of a tugboat, due to his superior knowledge as a seaman, should have known to be necessary.

It is insisted on behalf of the Mahanoy that, subsequent to the time when the Mahanoy made the Thomas Bulger fast outside the Dutch Boy, the boats inside the Dutch Boy were shifted by representatives of the National Lead Company, and particular attention is called to the testimony of the captain of the Dutch Boy as sustaining this conten-

tion. I do not, however, believe this to be so, because the captain of the Dutch Boy placed the Atlantic between the Dutch Boy and the Mary Ethel before the shifting, and placed the Bradley forward of the Mary Ethel along the bulkhead.

That the Atlantic was not shifted on the morning that the Thomas Bulger was tied up appears from the testimony of the engineer of the Atlantic, that she was lying alongside of another boat at the Hudson avenue pier at about 7 o'clock in the morning in question. I believe, from the appearance of the two witnesses and the reasonable probabilities of the two stories, that that told by the engineer of the Atlantic is true, because, the Atlantic being a boat used for shifting, I do not see why she would be in the position ascribed to her by the captain of the Dutch Boy, except at the time when she might have brought either the Mary Ethel or the Dutch Boy into the dock; and it seems to me that, while the condition described by the captain of the Dutch Boy undoubtedly may have existed at some time, it was at a time prior to that of the making fast of the Thomas Bulger alongside of the Dutch Boy.

The engineer of the Atlantic said that she was not used for shifting at any time on the morning in question, and that, when she went out to assist the barges that had gone adrift, she went out from alongside of a boat at the Hudson avenue pier. I do not see how the testimony of Mrs. Miller, wife of the captain of the Mary Ethel, can add any strength to the claim of the Mahanoy, because it appears by her own testimony that she did not at any time on the morning in question leave the cabin of her boat until the boats had broken adrift, and therefore whatever she says with reference to the shifting of the boats must have applied to some earlier time.

The captain of the Dutch Boy said that the boats were about 10 feet nearer to the Gold street pier as a result of the shifting on that morning. As I have pointed out before, I think he is in error as to the time when any shifting took place. He may be, however, and probably was, correct in the statement that his boat was nearer to the Gold street pier after the Thomas Bulger was made fast outside and before the boats broke away, because we must bear in mind that, when the Thomas Bulger was tied up outside the Dutch Boy, the tide was flood, and, if it had any effect whatever, it would be to take the boats away from the Gold street pier; whereas, at the time when the boats broke loose and for some time immediately prior thereto, the tide was and had been running ebb, and the tendency thereof was to carry the boats toward the Gold street pier, and some difference in their position would undoubtedly appear.

[4] I am therefore convinced that the contention of the Mahanoy that the boats were shifted by representatives of the National Lead Company after the Thomas Bulger was made fast outside of the Dutch Boy is not sustained. I therefore find the steam tug Mahanoy to be solely to blame.

A decree will enter in each suit in favor of the libelant against the steam tug Mahanoy, with costs, and, if desired, the usual order of reference will issue.