**A. S. WIKSTROM, INC.,** as owner of **THE LIGHTER NO. 64,** Libelant,

v.

**THE Tug JULIA C. MORAN,** her engines, boilers, tackle, etc., and Moran Transportation Company, Inc., Respondents.

United States District Court
S. D. New York.
Dec. 20, 1960.

Foley & Martin, New York City, John H. Hanrahan, Jr., New York City, of counsel, for libelant.

Burlingham, Hupper & Kennedy, New York City, H. Barton Williams, John S. Rogers, New York City, of counsel, for respondents.

BICKS, District Judge.

Libelant seeks to recover damages for the loss of the Lighter No. 64, and its cargo, alleged to have been caused by the negligence of the Tug Julia C. Moran.

The Lighter No. 64 was an old wooden carfloat which was purchased by libelant in April, 1956 and converted to a deck scow shortly thereafter. Captain Herbert Evans, a surveyor employed by the U.S. Salvage Association, testified that the No. 64 was unfit for towage when he inspected her at Wilmington, Delaware, on June 25, 1956, while she was undergoing repair. It is not contended that his report came to the attention of respondent. There is evidence in the record that further repairs were made shortly before July 19, 1956. On that date at about 11 a. m., the Julia C. Moran took the Lighter No. 64 in tow at Wilmington, bound for New York City. The trip was the first made by the Lighter after her conversion to a deck scow. The weather was good and the water calm. Prior to the commencement of the voyage Captain Bergsted, the master of the tug, had been aboard the No. 64 for about an hour, inspecting the pumps and the condition of the deck and the arrangement of the cargo thereon. Libelant does not suggest that Captain Bergsted did discover, or that from his limited

inspection he could have discovered, that the Lighter was unseaworthy. As the tug proceeded down the Delaware River, Captain Bergsted observed the Lighter, which was then being towed astern, tacking from side to side in a 40 degree arc. Both Captain Bergsted and Captain Evans testified, and the court finds, that such tacking was not unusual. At about 12 o'clock Captain Bergsted went off duty, as was his custom, and was relieved by the mate, Captain Fagerstrom. A deckhand was also present on the bridge. Upon his return to the pilot house at 4:-45, Captain Bergsted immediately noticed that the Lighter's freeboard, which had been between 2 and 3 feet at the stern when she was first taken in tow, was down to approximately 1½ feet. He slowed the engine, ordered the tug to head towards the beach, had the tow line taken in, and sent a man aboard to start the pumps. Captain Fagerstrom testified that either he or the deckhand had continuously watched the tow, and that just before Captain Bergsted came up to the pilot house he had noticed the low freeboard, cut the tug's speed and started out of the channel. I find, however, that the diminution in freeboard was first observed by Captain Bergsted. The Lighter No. 64 sank at 5:15 before effective measures could be taken to beach her.

■■ A tug owes its tow " * * * the duty to exercise such reasonable care and maritime skill as prudent navigators employ in the performance of similar service. The burden was upon petitioner to show that the loss for which he sought recovery was caused by a breach of that duty." Stevens v. The White City, 1932, 285 U.S. 195, 202, 52 S.Ct. 347, 350, 76 L.Ed. 699.

■ The conduct of the tug after the dangerous condition of her tow was observed is not attacked. Sternberg Dredging Co. v. Moran Towing & Transp. Co., 2 Cir., 1952, 196 F.2d 1002, rehearing denied 2 Cir., 200 F.2d 603, and Curtis Bay Towing Co. of Virginia v. Southern Lighterage Corp., 4 Cir., 1952, 200 F. 2d 33, relied upon by libelant, are, therefore, inapposite.

The query then, is whether the crew of the Julia C. Moran was negligent in failing to observe the decline in the Lighter's freeboard at an earlier time. Counsel have not cited, and the court in its own study has not found, any case that imposes a greater obligation upon a tug other than that she " * * * keep a reasonably close observation of her tow." The Mariner, D.C.Mass.1940, 35 F.Supp. 802, 805. The master of a tug is entitled to assume that a vessel offered for towage will be " * * * sufficiently staunch and strong to withstand the ordinary perils to be encountered on the voyage." The Edmund L. Levy, 2 Cir., 1904, 128 F. 683, 684; Southgate v. Eastern Transp. Co., 4 Cir., 1927, 21 F.2d 47. The suggestion that Captain Bergsted's inspection of the vessel relieved the Lighter from her warranty of seaworthiness is without merit. In the absence of any reason to expect a perilous condition to develop, constant surveillance of the tow is not mandated.

■ Libelant urges that an inference of negligence may properly be drawn from the fact that when first noticed, the freeboard had declined from between 2 and 3 feet to approximately 1½ feet. There is no evidence whatever as to the Lighter's condition except that when taken in tow her freeboard was between 2 and 3 feet and that at 4:45 the master observed the decline. Nor was there any evidence from which an inference can be drawn as to the reason for, and rate of, said diminution. The surveyor who inspected the tow after the sinking, on behalf of libelant, was not called as a witness, and we do not, therefore, have the benefit of his findings which might well have shed some light on the reason why the Lighter sank. In both Chemical Transporter, Inc. v. M. Turecamo, Inc., D.C.S.D.N.Y., No. A 194–64, 1960; and The Dutton No. 6, D.C.E.D.N.Y.1934, 9 F.Supp. 233, affirmed 2 Cir., 82 F.2d 999, relied upon by libelant, it was found that a perceptible list had gone unnoticed for

almost an hour. There is no such proof here.

The libelant has failed to carry its burden and, accordingly, the libel is dismissed.

The foregoing shall constitute findings of fact and conclusions of law in accordance with Supreme Court Admiralty Rule 46½, 28 U.S.C.A.