Gilbert HEBERT

v.

The BARGE ABL–22, the TUG NELLIE, Union Producing Company, Ben R. Edmundson, d/b/a Edmundson Towing Company, and, American Commercial Barge Line Company.

THOMAS JORDAN, INC.

v.

The TUG THELMA D, Her engines, tackle, apparel, furniture, etc., Gilbert Hebert, Olivea Lirette Hebert, Helen Ann Hebert Martin, Stephen Martin, Barge ABL–22, Her tackle, apparel, furniture, etc., and American Commercial Barge Line Co.

Nos. 4115, 4295.

United States District Court
E. D. Louisiana.
Sept. 13, 1963.

David Plater, George W. Healy, III, New Orleans, La., for libelant, Gilbert Hebert.

Thomas Walshe, Jr., New Orleans, La., for American Commercial Barge Line Co.

Rene Paysse, W. K. Christovich, New Orleans, La., for Union Producing Co.

James Schupp, Jr., Andrew Martinez, New Orleans, La., for Charlene M. Oursler and Tug Big M.

Wilson F. Shoughrue, Jr., New Orleans, La., for libellant, Thomas Jordan, Inc.

N. B. Barkley, Jr., New Orleans, La., for Dixie Carriers.

William S. Stone, Deutch, Kerrigan & Stiles, New Orleans, La., for Ben R. Edmundson d/b/a Edmundson Towing Co.

FRANK B. ELLIS, District Judge.

On March 1, 1959, at approximately 6:30 p. m. the Barge TJ–255 which was then being pushed by the Tug THELMA. D, was in collision with the Barge ABL–22, near milepost 50 of the Intracoastal Canal, west of Harvey, Louisiana. These libels arise out of that collision.

The evidence reveals that several days prior to the incident the Barge ABL–22, owned by American Commercial Barge Lines Company, loaded with pipe, was delivered to Dixie Carriers, Inc., for towing to the Union Producing Company dock, and delivery into the Union Producing Company slip, at Houma, Louisiana. Dixie Carriers subsequently contracted for the services of the Tug NELLIE, owned and operated by Ben R. Edmundson, d/b/a Edmundson Towing Company, for this latter towing operation.

Union Producing maintains two slips in the area on the Intracoastal Canal. One is located near Bourg, Louisiana, between mileposts 50 and 51 and the other is located seven miles west thereof in Houma.

The log entries of the NELLIE indicate that the ABL–22 was delivered into the Houma slip. As the evidence progressed in the case it became more and more evident that the Tug NELLIE proceeded to put the ABL–22 in the wrong slip; that Edmundson made no effort to notify anyone connected with the consignee company of the location of the barge, and it has been shown that at the Union facility where the barge was placed, there was no one there on weekends; whereas, at the Houma slip, where the barge should have been placed, there was a person employed by Union who lived on the premises who might have heard the landing whistles and come down to receive the barge. Probably the Tug Captain would and could have used the mooring facility (cable) which the Union Producing Company had set out for this purpose. Obviously, as has been testified, the cable was much stronger and durable than the

rope that was used, even though the defendant Edmundson established to the satisfaction of the Court that they followed the usual and customary procedure in using six-inch circumference Manila Line. It was testified that 50,000 pounds is the breaking strength of Manila line, while the usual cable had a resistency of 60 tons. It is indicated that had this barge been placed in the proper slip at Houma, Louisiana, that it would never have pulled loose from the moorings.

Sometime following delivery the ABL–22 broke her lines and drifted out into the waterway. The following evening the THELMA D, owned by Gilbert Hebert, pushing the Barge TJ–255, owned by Thomas Jordan, Inc., loaded with lumber, rounded the bend just west of Milepost 50, heading east, toward New Orleans, at a speed of about seven miles per hour. The Captain observed the unlighted ABL–22 to his starboard lying alongside and parallel to the south bank of the waterway near a clump of trees. At first observation the barge appeared to be moored to the trees along the bank, a frequent and common custom in this area. The THELMA D, with no reason to anticipate difficulty, proceeded ahead.

At the same time the Captain noticed the Tug BIG M, owned by Charlene Oursler, pushing barges and headed west, and aligned the THELMA D for a port-to-port passing with the BIG M and so indicated with a one-blast whistle signal. The BIG M appeared well to her starboard, hugging the north bank, and under the circumstances, it was reasonable to assume a normal and uncomplicated passing.

When the THELMA D was about 200 feet from where the ABL–22 appeared to be moored the Captain saw the end of the barge nearest him begin to move out into the waterway and into his path. He turned his wheel hard to port, and realizing that this would throw his tow into the path of the BIG M, threw the engines into reverse, under full throttle, before the rudder took effect. The bow of the TJ–255 was in collision with the ABL–22, the impact of which caused the stem of the THELMA D to split and her sides to open up. At this time the BIG M had not yet reached the scene of the collision. When the Captain noticed that his vessel was taking on water he headed toward the south bank, where she sank within a few minutes. The Court finds that prior to the accident the THELMA D and the Barge TJ–255 were seaworthy in all respects, properly lighted, manned and equipped.

■■ It is a basic rule of law that a tug's duty is ended only when she had delivered her tow to the agreed and proper destination; has moored her in an apparently safe position and in an apparently safe berth; and has seen that she is moored properly under the circumstances; The Anna O'Boyle, 2 Cir., 122 F.2d 286; The May Queen, 2 Cir., 298 F. 95; The Norwich Victory, E.D. Pa., 77 F.Supp. 264, aff'd United States v. Dump Scows, No. 116, No. 120 & No. 122, 3 Cir., 175 F.2d 556, cert. den. American Dredging Co. v. United States, 338 U.S. 871, 70 S.Ct. 147, 94 L.Ed. 534; The Henry Buck, D.C.S.C., 38 F. 611; Empire Park Square Lumber Co. v. Manhattan Lighterage Corp., 2 Cir., 252 F. 2d 165; The Mary Ethel, E.D.N.Y., 290 F. 458, aff'd 5 F.2d 1013; Pennsylvania Railroad v. James McWilliams Towing Line, 2 Cir., 277 F. 798.

The NELLIE'S duty in the instant case had not yet ended, because the tow had not been brought to the proper destination and had not been moored properly under prevailing circumstances, The Sherlie, 2 Cir., 173 F.2d 708; New Jersey Shipbuilding & Dredging Company v. Tracy Towing Line, E.D.N.Y., 42 F.2d 1005. Therefore, the Tug NELLIE having moored her tow with insufficient lines and in an improper slip, she and her owners are responsible for the tow breaking loose, The Norwich Victory, supra; Pennsylvania Railroad Company v. James McWilliams Towing Line, supra.

■■ The Court finds that the THELMA D, having done all she could to pre-

vent collision, without steering into the path of the BIG M, is without fault for any damage caused by the Collision, The Lizzie D. Shaw, 3 Cir., 47 F.2d 820, and the Court consequently finds that the NELLIE'S negligence was the sole and proximate cause of the collision.

Therefore, she, and her owners, Ben R. Edmundson, d/b/a Edmundson Towing Company, by whose fault the Barge ABL–22 was adrift in the Intracoastal Canal on March 1, 1959, must bear full responsibility for all damages of the Barge TJ–255 and the THELMA D.

■ The Court also finds that the Tug BIG M, owned and operated by Charlene Oursler, was in no way negligent or in any way responsible for the collision. The Court further finds that neither the American Commercial Barge Line Company, as owner of the ABL–22, nor Union Producing Company, consignee of the cargo of pipe, were in any way negligent in the premises. The Court still further finds that Dixie Carriers were in no way negligent, this organization, in effect, acting merely as middle man in arranging for towage of the ABL–22 and its cargo from New Orleans to Houma and that they were in no way negligent in selecting Ben R. Edmundson, d/b/a Edmundson Towing Company, as independent contractor for towage of the barge.

Dixie Carriers therefore cannot be held liable, vicariously, to third parties, such as the libellants involved here, for the negligence of Mr. Edmundson and/or the Captain and crew of the NELLIE, Sturgis v. Boyer, 1861, 24 How. 110, 65 U.S. 110, 16 L.Ed. 591; The Clara Clarita v. Cox, 1874, 23 Wall. 1, 90 U.S. 1, 23 L.Ed. 146; People of the State of California v. The Jules Fribourg, N.D. Cal., 140 F.Supp. 333; Gypsum Queen v. Tug Peerless, E.D.Va., 1953, A.M.C. 2071.

Although there may be in rem responsibility on the part of the ABL–22, the Court finds it unnecessary for a definitive judgment to consider this point.

Decree accordingly.