**114**

The **OHIO RIVER COMPANY**, as Owner or Operator of the **BARGE OR-719** and **Bailee** of the cargo laden aboard,

v.

**M/V IRENE CHOTIN**, in rem, the Home Insurance Company, in personam, Chotin Towing Corp., in personam, Greater Baton Rouge Port Commission, in personam, and Berwick Bay Towing Co., Inc., in personam.

**No. 670.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.
Feb. 1, 1965.

Edmond C. Salassi, Robert B. Acomb, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for libelant, Ohio River Co.

Charles E. Dunbar, III, John Poitevent, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for respondents, M/V Irene Chotin, Chotin Towing Corp., M/V Baton Rouge, and Berwick Bay Towing Co., Inc.

George Mathews, Baton Rouge, La., J. Y. Gilmore, Jr., James A. George,

Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger, New Orleans, La., for Greater Baton Rouge Port Commission and Home Ins. Co.

Tom F. Phillips, Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, La., for respondent-impleaded, Travelers Ins. Co.

WEST, District Judge.

Libelant, the Ohio River Company, as owner and operator of the Barge OR-719, and as bailee of the cargo laden aboard, brings this suit against Chotin Towing Corporation, Berwick Bay Towing Co., Inc., the Greater Baton Rouge Port Commission, and its public liability insurer, The Home Insurance Company, in personam, and against the M/V IRENE CHOTIN and the M/V BATON ROUGE, in rem, for damages allegedly sustained by it when the OR-719 sank on or about April 17, 1962. Respondents, Chotin Towing Corporation and Berwick Bay Towing Co., Inc., each filed petitions of interpleader under the 56th Admiralty Rule against the Greater Baton Rouge Port Commission, in whose custody they alleged the barge was at the time of sinking. The Port Commission and The Home Insurance Company answered the libel and the petition of impleader, denying liability on various grounds, including a defense of sovereign immunity, and also filed a petition of impleader against Travelers Insurance Company alleging that if the Port Commission was cast in judgment, Travelers was liable over to it under the provisions of a comprehensive general liability policy issued by Travelers in favor of the Port Commission. Travelers answered, denying that its policy covered the claim here asserted by libelant. Trial was held on September 29, 1964, after which time was allowed for all counsel to file briefs. Now, after considering the record herein, the evidence adduced at the trial hereof, and the briefs of counsel, the Court concludes that the loss and damage complained of by libelant was caused entirely by libelant's own fault and negligence, and that hence, libelant is not entitled to recover from any of the respondents herein. In connection with this holding, the Court now makes the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

1. Libelant, as the owner of the Barge OR-719, and as bailee of the cargo laden aboard, entered into a contract of towage with respondent, Chotin Towing Corp., pursuant to which the tug M/V IRENE CHOTIN picked up the OR-719 at Cairo, Illinois, on April 6, 1962, for a trip down the Mississippi River to Baton Rouge, Louisiana.

2. The M/V IRENE CHOTIN is a tow boat 138.2 feet in length, 34.6 feet in breadth, and 9.8 feet in depth, owned and operated at all times pertinent hereto by the Chotin Towing Corp. The Barge OR-719 is a double raked, steel hulled, unmanned, open hopper barge, 175 feet in length, 26 feet in breadth, with a loaded draft of 9 feet, owned at all times pertinent hereto by libelant, the Ohio River Company. Her raked ends and wing tank compartments were designed to be watertight.

3. The M/V BATON ROUGE is a tow boat 81.1 feet in length, 24 feet in breadth, and 9.8 feet in depth, owned and operated at all times pertinent hereto by Berwick Bay Towing Co., Inc.

4. The Greater Baton Rouge Port Commission is an agency of the State of Louisiana, created by Article 6, Section 29, et seq. of the Constitution of Louisiana, charged with the operation of the Baton Rouge Barge Canal and Terminal at Devil's Swamp, Baton Rouge, Louisiana.

5. Libelant loaded the OR-719 with about 857 tons of Imperial Nut and Slack Coal at Huntington, West Virginia, on March 26, 1962, and had her towed to the barge fleeting facility of the Cairo Terminal and Fleeting Company, Inc. at Cairo, Illinois, where she remained from March 31, 1962, to April 6, 1962. On April 5, 1962, while the OR-719 was at the Cairo Terminal, she had somehow topped around and struck a bridge, re-

sulting in a sizeable hole in her raked end. The holed area was where the bottom plating meets the bottom of the head log in the bow rake compartment and to starboard of the center line. Due to the fracture, the head log was set in about 12 inches, fractured at top and bottom. In her loaded condition, the bottom of the holed area was about 24 inches above the water line.

6. Immediately after the damage occurred, Mr. Hugh Hammond, a marine surveyor, and the secretary-treasurer of Cairo Terminal and Fleeting Company, Inc., made an inspection of the OR-719's damaged rake. A report of the survey was made to Mr. Joseph A. Deye, libelant's chief of engineering.

7. When Captain Nathe Lawson, the captain of the M/V IRENE CHOTIN, went to take the OR-719 in tow on April 6, 1962, he observed the holed area in the barge and brought it to the attention of Cairo Terminal's dispatcher. He was informed that libelant was aware of the damage to the barge, but that libelant wanted the M/V IRENE CHOTIN to take it in tow and deliver it to the Port of Baton Rouge as previously agreed upon. Captain Lawson inspected the damage and decided that he could safely tow the barge to Baton Rouge, keeping the holed area on the up river end as he proceeded down river to the Port of Baton Rouge.

8. The M/V IRENE CHOTIN thus took the OR-719 in tow on April 6, 1962, and successfully proceeded down the Mississippi River to the Port of Baton Rouge, arriving there on April 9, 1962, at which time, in accordance with prior instructions, the barge was safely delivered to the barge fleeting facility at Baton Rouge of the Baton Rouge Coal and Towing Company. This trip down river was made without mishap. Very little, if any, rain was encountered on the trip down river, and at no time was it necessary to pump out the OR-719 during this trip. After thus delivering the OR-719 to the fleeting area, the M/V IRENE CHOTIN had no further contact with the barge.

9. The OR-719 remained moored in the Baton Rouge Coal and Towing Company fleeting area at Baton Rouge from April 9, 1962, until April 17, 1962. When the time arrived to unload the barge, the M/V BATON ROUGE, a river tow boat owned by Berwick Bay Towing Co., Inc. towed her, on April 17, 1962, a short distance up river to the Greater Baton Rouge Port Commission's barge terminal dock. Before taking her in tow, Captain Leo Lasseigne, the pilot of the M/V BATON ROUGE, was informed by his dispatcher of the damage in the rake of the barge. Being thus informed, he carefully made up to the barge, keeping the holed rake of the barge on the down river end as he pushed it up river to the Port Commission's facility at Devil's Swamp. When he made up to the damaged rake of the barge, he noticed that there was a little water in the barge which he thought might have resulted from rain, but he did not think it necessary to pump it out. Captain Lasseigne testified that he advised "a man at the dock" that the barge was damaged, and that it had water in it. Captain Lasseigne's relief pilot, Captain Edward J. Guidry, corroborates this testimony. However, the crane operator at the dock, Mr. Herman Allen Glatt, who was apparently the only Port Commission employee present when the barge was delivered, steadfastly denies that he was informed of any damage to the barge, but asserts that the captain of the M/V BATON ROUGE stated that he had to pump water out of the barge before he could deliver it. In any event, the Court does not feel that it is particularly important whether or not the Port Commission was advised of the damage to the rake of the OR-719 at the time she was delivered for unloading, as will be apparent from the other findings herein made.

10. When the Barge OR-719 was delivered to the Port Commission facility in Devil's Swamp on April 17, 1962, at about 3:00 p. m., she was loaded with about 857 tons of coal, and was on an even trim with no noticeable list. She

was moored at the unloading dock at the spot designated by the crane operator, whereupon the crane operator began unloading the coal. After delivering the OR-719 to the unloading dock and seeing that she was safely moored, the M/V BATON ROUGE had no further contact with the barge. Between 3:00 p. m. and 3:30 p. m., Mr. Glatt, the crane operator, unloaded about 30 tons of coal. This coal was taken from the opposite end of the barge from the damaged end. At 3:30 p. m. unloading operations ceased and Mr. Glatt "knocked off" work for the day. At that time the OR-719 was on an even trim with no list apparent. The unloading of the 30 tons of coal had made no noticeable difference in the trim of the barge. She still had about one foot of freeboard amidships.

11. No one apparently saw the OR-719 again until about 6:30 a. m. the following day, April 18, 1962, when Mr. Glatt returned to work. Upon his return he saw that the barge had sunk at her mooring on a 45 degree angle, with the holed rake down under water, and the undamaged rake protruding 20 feet above the water.

12. The Port Commission employed no night watchman, and there was no one attending the barges during the night.

13. Unloading 30 tons of coal from one end of the barge loaded with 857 tons would, under normal circumstances, cause the other end to settle down in the water not over three or four inches at the most. At the time the OR-719 was moored for unloading, the bottom of the hole in her raked end was about 24 inches above the water. Absent some other unusual circumstances, after 30 tons of coal were unloaded from the undamaged end, the bottom of the hole in the other rake end would still have been at least 20 inches above the water. Thus, the slight settling caused by the unloading of 30 tons of coal from the barge was, for all intents and purposes, unnoticeable, and certainly not sufficient to allow water to enter the hole in the rake.

14. The OR-719 was built in 1954 for libelant, and in the eight years following her construction she had never been dry-docked and tested for watertight integrity of her hull, bulkheads, and compartments.

15. After the OR-719 was raised, surveys disclosed that her rake and wing tanks were not, in fact, independently watertight. Her internal transverse bulkheads were not watertight, and thus water could flow from the open hopper into the rake and wing tanks. Furthermore, from the evidence adduced during the trial, this Court is convinced that there were small fractures, possibly weld fractures, in the hull of the OR-719 which permitted water to gradually enter the hopper. Ordinarily this might not have caused the barge to sink as it did. But on this occasion, due to the lack of watertight integrity of the transverse bulkheads, and due to a three or four inch differential between the freeboard at the undamaged rake end and the holed end of the barge, all of the water that entered the hopper, both through such small fractures in the hull and from rainfall, was permitted to flow into the damaged rake compartment. Finally, during the fifteen hours between 3:30 p. m. on April 17, and 6:30 a. m. on April 18, 1962, sufficient water flowed into the damaged rake compartment to cause the holed area to settle below the water line. Water then freely entered through the large hole in the rake causing the barge to sink.

16. There was no negligence on the part of the crane operator, Mr. Glatt, in the manner in which he proceeded to unload the barge. Whether or not he knew of the hole in the rake end of the barge is immaterial. Had the barge been otherwise seaworthly, unloading the 30 tons of coal from the undamaged end would not have caused her to sink.

17. The OR-719 was unseaworthy when she left Cairo, Illinois, and she was unseaworthy when she arrived at the Port Commission's dock. She was unseaworthy both because of the large hole in her rake end, and because of

the lack of watertight integrity of her hull and transverse bulkheads and compartments. Libelant knew of the unseaworthy condition caused by the holed area in her rake, and should have known of the impairment of the watertight integrity of her bulkheads and compartments.

18. Neither Chotin Towing Company nor Berwick Bay Towing Co., Inc. were guilty of any negligence whatsoever. They completed their contract of tow without incident. The captains and crews of both the M/V IRENE CHOTIN and the M/V BATON ROUGE exercised the care and skill that would be expected of prudent navigators under similar circumstances.

19. Before leaving Cairo, Illinois, for the trip down river, the hole in the rake end of the barge could have been repaired by libelant in about eight hours at a cost of approximately $200.

20. Libelant was guilty of the grossest kind of negligence in allowing the damaged barge to leave Cairo, Illinois on her trip down river without first making sure that she was in a seaworthy condition.

21. While, as has been suggested, it is possible that the unloading of the 30 tons of coal may have caused stresses or strains which ultimately caused weld fractures below the water line, nevertheless, unloading this relatively small amount of coal did not, without the assistance of leakage somewhere below the water line, and leakage between what were supposed to have been watertight compartments, cause the hole in the rake end to sink below the water line.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this matter under its admiralty and maritime jurisdiction.

■ 2. The towing vessel is not an insurer of its tow, nor is it liable as a common carrier. If a loss occurs during the towage, the owner of the tow, in order to recover from the towing vessel, must carry the burden of proving, by a preponderance of evidence, negligence on the part of the towing vessel. Stall & McDermott v. The Southern Cross, 196 F.2d 309 (C.A.5–1952); Louisiana Materials Co. v. Royal Pellegrin, 211 F. Supp. 4, (E.D.La.–1962).

■ 3. A towing tug's duty has been performed and completed when she has delivered her tow to the agreed destination and has seen that it is properly moored or tied up in an apparently safe berth. Hebert v. Barge ABL-22, 221 F.Supp. 725 (E.D.La.–1963), and cases cited therein.

■ 4. The Court finds, as a matter of law, that the Chotin Towing Corp. performed its duty under its contract of towage in a careful and prudent manner and without any negligence on its part, when it delivered the Barge OR-719 safely to the fleeting facility of the Baton Rouge Coal and Towing Company at the Port of Baton Rouge, and that the Berwick Bay Towing Co., Inc. performed its duty of towage in a careful and prudent manner and without negligence when it safely delivered the OR-719 from the fleeting facility of the Baton Rouge Coal and Towing Company to the unloading facility of the Baton Rouge Port Commission at Devil's Swamp. Thus, these two respondents and their respective vessels, the M/V IRENE CHOTIN and the M/V BATON ROUGE are absolved from all liability in this matter.

■ 5. As a general rule the owner of a barge is at fault when its vessel is unseaworthy, and when loss occurs because of the unseaworthy condition, the owner thereof will be denied recovery for such loss. A. S. Wikstrom, Inc. v. The Julia C. Moran, 190 F.Supp. 250 (S.D.N.Y.–1960); Southgate v. Eastern Transportation Co., 21 F.2d 47 (C.A. 4–1927); Stall & McDermott v. The Southern Cross, supra; Louisiana Materials Company v. Royal Pellegrin, supra. The law is well settled to the effect that when a vessel sinks under normal conditions, and absent sufficient

proof that improper handling caused the sinking, the vessel is presumed to have been unseaworthy. O'Boyle v. Senator Rice, 2 Cir., 15 F.2d 882; Southern Lighterage Corp. v. The J. Alvah Clark, D.C., 103 F.Supp. 580; Metropolitan Coal Company v. Howard, 155 F.2d 780 (C.A.2–1946). This principle of law is applicable here. The OR-719 was safely delivered to the unloading dock. Unloading was commenced in a normal, routine fashion. Even if it appears now that it might have been wiser to have commenced unloading at the opposite end of the barge, nevertheless, had the OR-719 not been unseaworthy for reasons other than the obvious hole in her rake end, the unloading of the 30 tons of coal would not have caused her to sink. Thus, since the OR-719 did sink under normal conditions, and in the absence of proof that mishandling of the barge or her cargo caused the sinking, it is legally presumed that the barge was unseaworthy and that she sank because of such unseaworthiness. For this unseaworthiness, the libelant is solely responsible.

6. Libelant having failed to prove any negligence whatsoever on the part of the M/V IRENE CHOTIN or the M/V BATON ROUGE, or their crews or owners, and having failed to prove any negligence on the part of the Baton Rouge Port Commission or its employees or agents which proximately caused the sinking of the OR-719, and libelant itself having been found guilty of negligence in furnishing an unseaworthy barge without having notified either the towing tugs or the Port Commission of the unseaworthy condition of the barge which ultimately caused her to sink, and the Court having found that the Barge OR-719 did sink because, and only because of its unseaworthy condition, judgment must be entered herein in favor of all respondents, absolving them, and each of them, from any and all liability in this case, and against the libelant, denying its claim for damages. Judgment will be entered accordingly.